Ronnie Joe WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 62001.

Court of Criminal Appeals of Texas,
Panel No. 3.

Nov. 24, 1982.

Rehearing Denied Jan. 12, 1983.

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky and Mike Gillett, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before DALLY, W.C. DAVIS and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

### I. The Conviction and the Punishment

Ronnie Joe Williams, appellant, appeals his conviction by a jury for committing the

felony offense of Unauthorized Use of a Motor Vehicle. Punishment, enhanced by two prior felony convictions, was assessed by the jury at life imprisonment in the penitentiary. See V.T.C.A., Penal Code, Sec. 12.42(d).

## II. *The Grounds of Error and This Court's Holding*

Appellant presents for review in his appeal two grounds of error. One ground of error complains of a partially unresponsive answer given by Earl Chambers, a State's witness. The other ground of error complains of the trial court's refusal to admit into evidence a judgment pertaining to a previous mental commitment the appellant had sustained in 1972. His grounds of error will be overruled and the judgment affirmed.

## III. *The Facts Pertaining to the First Ground of Error*

The appellant does not challenge the sufficiency of the evidence. Suffice it to say, the evidence shows that the appellant was found guilty of unlawfully operating a 1974 Corvette automobile. See V.T.C.A., Penal Code, Sec. 31.07. The undisputed evidence shows that on January 22, 1978, a Corvette automobile was unlawfully taken from the lot of a used car dealership in Dallas. On January 29, 1978, Earl Chambers, the present husband of appellant's former wife, saw the appellant driving a Corvette that was similar in type and color to the stolen Corvette. The evidence reflects that Chambers and his wife had gone to a liquor store to get a fifth of Strawberry Hill wine and some beer. The record also reflects that while Chambers was inside the liquor store making his purchases, he became aware of the fact that the appellant was outside the store assaulting his wife. Chambers went outside, and intervened with a piece of lead pipe. He struck the appellant's body with the pipe, including hitting the appellant on the head several times with the pipe, which caused abrasions and contusions to appellant's head. Thereafter, appellant got into the Corvette, drove the vehicle into the interior of the liquor store, causing damage to be inflicted to both the Corvette and the

store, as well as to Chambers. Chambers testified outside the jury's presence that the injuries he sustained when struck by the Corvette resulted in his being hospitalized for 27 days. After causing the damage to the Corvette and the building, as well as the injury to Chambers, appellant then left in the Corvette. Apparently, the police were notified of what had happened outside the liquor store and of the appellant's act of driving the Corvette into the liquor store. We assume by their later action of stopping a Corvette being driven by appellant that they were given a description of the appellant and the vehicle he was driving when he left the location of the liquor store. On January 30, 1978, the appellant was seen by police officers driving a damaged Corvette, which was later shown to have been the identical vehicle unlawfully taken from the lot of the used car dealership. Appellant later abandoned the vehicle, but after a foot chase by police officers he was arrested.

## IV. *The Partially Unresponsive Answer Issue*

Appellant complains in his first ground of error of the following answer Chambers gave on redirect examination by the prosecuting attorney:

Q: That marriage relationship [between appellant and Chambers' present wife] is it your understanding that that ended back in 1973 or approximately that time?
A: Yes sir, *she got it annulled when he got sent to the penitentiary.* [Emphasis Added].

Appellant's trial attorney immediately objected to the unresponsive part of the answer, the trial judge sustained the objection, and instructed the jury to disregard the entire answer, but overruled the appellant's motion for mistrial.

Chambers' partially unresponsive answer, "she got it annulled when he got sent to the penitentiary," was highly improper, and, as the trial judge well put it: "the witness should not have made that statement." In fact, in light of what occurred at a hearing outside the jury's presence concerning the admissibility of any of Chambers' testimo-

ny, the unresponsive part of Chambers' answer bordered on being contemptuous. The record reflects that only part of what occurred at the liquor store was admitted into evidence. The parts about appellant assaulting his former wife, Chambers' assaulting appellant, and appellant assaulting Chambers with the vehicle were excluded from the jury. Appellant's complaint under his first ground of error only addresses the partially unresponsive answer of the witness, Chambers. We agree with appellant that Chambers should not have given, in his answer to the question asked, the above underscored portion of his answer. In *Ulmer v. State*, 106 Tex.Cr.R. 349, 292 S.W. 245 (1927), this Court was confronted with the following question and answer: "Q: How long had you been living with your father at that time? A: All my life except when he was in the penitentiary." This Court stated: "Its receipt [the fact the defendant had been in the penitentiary] was opposed by the well known and often applied rule of evidence which excludes collateral offenses or transactions not admitted under some exceptions to the rule. The fact that the testimony came unsolicited and not in response to the questions propounded, and was entirely volunteered by the witness, did not render it less harmful to the appellant. It was introduced by the prosecution, and the prosecution is entirely responsible for its presence in the record, and the error is one that cannot be cured." See also *Salinas v. State,* 146 Tex.Cr.R. 358, 175 S.W.2d 253 (1943) ("Q: You are so well acquainted with him (the defendant) that he calls you 'San'? A: Yes, sir. Q: You have had occasion to see and talk to him? A: Yes, sir, since he returned from the penitentiary." Held, notwithstanding an instruction from the trial judge, the error was not harmless in view of the fact that the maximum punishment was assessed.) However, our research also reveals that error will not necessarily be reflected in every unresponsive answer by a State's witness which implicates a reference to the fact that a defendant has been "sent to" or incarcerated in the penitentiary. Even where such prejudicial information is inad-

vertently placed before a jury, the general rule is still that an instruction by the trial judge to the jury to disregard such answer will be sufficient to cure any unresponsive answer. See and compare *Richardson v. State,* 624 S.W.2d 912 (Tex.Cr.App.1982). In order to determine whether an exception to the general rule exists, we believe that it is necessary to judge each such issue upon the particular and unique facts of a case. In this cause, in light of the facts adduced, the fact that appellant did not testify or offer any evidence, and the additional fact that appellant's having previously been sentenced to the penitentiary was absolutely and totally irrelevant and immaterial to any issue of the case, we are able to conclude that the unresponsive answer of the witness, Chambers, was error. We further hold that such error was not curable by the instruction the trial judge gave to the jury. However, we also reluctantly hold that the error was not reversible error because of the harmless error doctrine of law. See *Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705 (1967). We are unable to state that there is a reasonable possibility that the part of the unresponsive answer of Chambers, which reflects that the appellant previously had been sentenced to the penitentiary, affected either the jury's verdict of guilt or the punishment assessed. E.g., *Clemons v. State,* 605 S.W.2d 567, 571 (Tex.Cr.App. 1980). The facts are undisputed that on the day in question someone unlawfully took from the lot of the car dealership a Corvette vehicle. Seven days later, appellant was seen driving a similar vehicle as that stolen. Less than ten days from the date of the theft, appellant was arrested after he was seen driving what was proved to be the identical vehicle taken from the lot of the dealership. By the very terms of the statute, see V.T.C.A., Penal Code, Sec. 31.07, an offense is committed when one unlawfully and without the effective consent of the owner operates another's motor-propelled vehicle. See *Lyles v. State,* 582 S.W.2d 138 (Tex.Cr.App.1979). Thus, we are unable to state that the inadmissible testimony of Chambers could have affected the guilt of

the appellant. As to its having an affect upon the punishment assessed the appellant, we first observe that the appellant was charged with being an habitual criminal. Upon the jury's finding that the two alleged prior convictions were true, the punishment was automatically fixed by law. See V.T.C.A., Penal Code, Sec. 12.42(d). Thus, we are also unable to state that the inadmissible testimony had any affect upon the punishment assessed appellant. Appellant's first ground of error is overruled.

V. *The Judgment of Commitment Issue*

 Appellant's second and last complaint concerns the refusal of the trial court to admit into evidence a judgment of commitment, which reflects that on October 25, 1972, after it was shown that the appellant had been examined by two physicians and found to be "mentally ill and require[s] observation and/or treatment in a mental hospital," appellant was adjudged to be mentally ill and was committed to Terrell State Hospital as a patient for observation and treatment. In the cause at Bar, appellant had filed, pre-trial, notice of his intent to interpose the defense of insanity. It is also apparent to us that his purpose in having admitted into evidence the 1972 judgment of commitment was an effort to invoke the presumption of insanity, and thus place the burden of proof upon the State to show that he was sane at the time of the commission of the offense at Bar. See *Morse v. State,* 68 Tex.Cr.R. 351, 152 S.W. 927 (1913). Even assuming, for argument purposes, that the trial court was in error in its refusal to admit the document into evidence, which error we do not find, the document's very terms do not indicate or reflect that appellant was adjudicated to be an insane person. Thus, even had the trial court admitted the document into evidence, it would not have been sufficient in itself to show that the appellant had been previously adjudged insane, and therefore entitled to the presumption that he was still insane at the time of the offense. Nor would the document's admission into evidence have been sufficient to have placed the burden of proof upon the State to show that appellant was sane at the time of the

offense. See *Thompson v. State,* 612 S.W.2d 925 (Tex.Cr.App.1981). Appellant did not attempt to present during his trial any other evidence pertaining to his mental history. Even if we considered the document as evidence, we would still be left with a dry hole concerning evidence of insanity. Thus, we must strongly disagree with appellant's statement that: "Harm is apparent since the exclusion of the evidence resulted in the inability to present the insanity defense." Appellant's second ground of error is overruled.

The judgment is affirmed.

DALLY, J., concurs in the result.