**Santos Covarrubias GARCIA a/k/a Santos Garcia Covarrubias, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–83–430CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 15, 1984.

Discretionary Review Refused
Oct. 24, 1984.

---

1. V.T.C.A. Penal Code, Sec. 12.42(d) prior to 1983 amendment.

Albert Low, Houston, for appellant.

Calvin Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

A jury found appellant guilty of murder and assessed punishment at thirty years' imprisonment. Appellant now contends that there was insufficient evidence to support his conviction, that his right to silence was violated, and that certain questions

and answers were sufficiently prejudicial to necessitate a mistrial. We find no reversible error and accordingly affirm the judgment of the trial court.

The trial record reflects that Leroy Schultz, foreman at an oil screen company, was on the job one morning when he heard five gunshots. He looked in the direction from where the shots came; and within five or six seconds, he observed a man backing out of the front seat on the driver's side of a car parked alongside the road. He noted that the man was of Spanish descent and was wearing a straw hat with a greenish-blue shirt and dark pants. As the man walked quickly away from the car, Schultz noticed that he put something down inside his belt. The man then continued on down the street.

Schultz summoned a co-worker, Mark Scully, to join him, and the two men followed the fleeing man in Schultz's car. They passed the man twice and were able to get a good look at him. They observed that he was walking rapidly, looking back and forth, and appeared to be holding something inside his belt. Schultz and Scully then returned to the car where Schultz had first noticed the man. There, they found a man's body in a ditch near the car, with three noticeable puncture wounds. Scully went back to the plant. The plant manager notified the police of the incident and relayed Scully's description of the fleeing man. Based on this information, appellant was located and arrested twenty to thirty minutes later. A search revealed that he possessed a .32 caliber pistol.

■ In his initial ground of error, appellant contends that the trial court erred by overruling his motion for instructed verdict because there was insufficient evidence that appellant committed the offense. Since this case involves circumstantial evidence, the proper test is whether the evidence excludes every other reasonable hypothesis except the guilt of the accused. *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex. Crim.App.1983). While a strong suspicion or mere probability is not enough, every

fact need not individually point to the guilt of appellant; rather, the cumulative effect of the incriminating facts may be sufficient. *Carlsen* at 447. After reviewing the evidence and applying these standards, we find that there was sufficient evidence for the jury to conclude that appellant committed the offense. Indicative of this is the fact that both Schultz and Scully identified the appellant as the man they observed that morning. Further, a ballistics expert testified that he compared bullets fired from the pistol which appellant was carrying with a bullet found in the body of the deceased, and found that they were fired from the same weapon.

Appellant, however, claims that several inconsistencies in the evidence indicate that the appellant did not commit the offense. First, he contends that it would have been virtually impossible for appellant to have shot the victim, climb out of the ditch, enter the passenger side of the car, and exit the driver's side of the car where Schultz saw him—all in the five to six seconds between the time Schultz heard the shots and when he saw appellant leaving the car. We do not perceive such an impossibility. There was some disagreement as to the depth of the ditch and the distance to the car. However, pictures introduced into evidence indicate that it was reasonably possible for appellant to travel that distance even in that period of time. The jury could, and did, reasonably so conclude.

Secondly, appellant points to the fact that the medical examiner recorded that a .38 caliber bullet was recovered from the victim's head, while appellant was arrested with a .32 caliber pistol. Although the medical examiner clearly made this statement, the remainder of the testimony, from the balistics expert and other police officers, was that the victim was shot with a .32 caliber gun. It is thus reasonable to assume that the jury concluded the medical examiner simply made a mistake.

Finally, appellant claims that the failure to establish the time of death and the ownership of the murder weapon were fatal to the State's case. Appellant suggests that

it is possible someone else killed the victim and that appellant merely happened on to the scene, took the gun and fired five test shots in the air to insure that it worked. This is a novel hypothesis, however, we feel it is simply "too tall a tale to swallow." *See Callahan v. State,* 502 S.W.2d 3, 7 (Tex.Crim.App.1973). We conclude that these discrepancies, viewed both individually and in terms of their cumulative effect, fail to present any reasonable hypothesis except that appellant committed the offense. The first ground of error is overruled.

In his second ground of error, appellant contends that the following testimony resulted in a violation of his post-arrest right to silence.

> PROSECUTOR: All right. Now, after you read those rights to the Defendant in Spanish, did he acknowledge in some way that he understood those rights.
>
> OFFICER VALENTA: Yes, sir. He appeared to acknowledge that he understood what I told him.
>
> PROSECUTOR: Did the Defendant say anything to you or tell you anything at that time?
>
> OFFICER: No, sir.

Appellant claims that because these statements referred to the period after appellant was given his *Miranda* warnings, the officer's testimony necessarily called attention to appellant's failure to provide an exculpatory statement and penalized him therefore. We disagree. The entire line of questioning examined whether appellant, who did not speak English, understood his constitutional rights. It reasonably appears that the State's attorney was simply trying to elicit whether appellant indicated that he did or did not so understand. Taken in its obvious context, we find no violation of his right to silence, and accordingly overrule appellant's second ground of error.

In his final two grounds of error, appellant contends that two lines of questioning were so prejudicial as to require a mistrial. He first points to appellant's cross-examination of Detective Preece concerning a photograph taken of appellant at the police station.

> Detective Preece: ... I was not personally present when these pictures were made.
>
> Appellant's Counsel: Was it done at your direction since you were the supervising detective.
>
> Detective Preece: Yes, sir.
>
> Counsel: Then you asked them—you knew about these pictures?
>
> Preece: It's a normal course of operation that whenever a statement is taken from anyone a Polaroid photo is made so that we can ...

At that point, appellant objected on the basis that the answer was nonresponsive. The judge sustained the objection and instructed the jury to disregard the reference to statements. Generally, an instruction to disregard an unresponsive answer inadvertently put before a jury is sufficient to cure the effect of such an answer. *Williams v. State,* 643 S.W.2d 136, 138 (Tex.Crim.App. 1982). It requires reversal only if there is a reasonable possibility that the unresponsive answer affected the jury's verdict of guilt or the punishment assessed. *Williams* at 138. The instant answer did not refer to the type or contents of the statement, nor was there any further reference to a statement during the remainder of the trial. As such, we do not find that the reference had any prejudicial impact on the jury.

During the punishment stage of the trial, the State's attorney questioned appellant's brother as follows:

> Q: Now, Mr. Garcia, your brother is not a resident of the United States; is that true?
>
> A: No.
>
> Q: And is it also true, Mr. Garcia, that your brother does not even have any papers allowing him to remain legally here in the United States?

Appellant's counsel objected before the witness answered and the jury was instructed to disregard the question. Appellant claims that the question was intended to

inform the jury that appellant was an illegal alien, and was therefore improper and prejudicial.

 As a general rule, an improper question can be cured or rendered harmless by either a withdrawal of the question or by an instruction to disregard. *Carter v. State,* 614 S.W.2d 821, 824–25 (Tex.Crim. App.1981); *Adams v. State,* 642 S.W.2d 211, 212 (Tex.App.—Houston [14th Dist.] 1982, no pet.). An instruction to disregard is inadequate to cure error when it appears the question is clearly calculated to inflame the minds of the jurors and is of such a character to suggest the impossibility of withdrawing the impression produced on their minds. *Carter* at 824–25; *Adams* at 212. Here, the witness did not answer the question, so the jury was never informed of appellant's actual illegal status. While we do not approve of such attempts to interject improper evidence into the case, we feel that here the lack of an ultimate answer prevented it from rising to the point of being fundamental error and incurable. We find the court's jury instructions were curatively sufficient under the circumstances of this case. Appellant's third and fourth grounds of error are accordingly overruled.

The judgment of the trial court is affirmed.