**Wayne Dotson WALDO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–84–00120–CR.

Court of Appeals of Texas, San Antonio.

Feb. 28, 1986.

382

Mark Stevens, San Antonio, for appellant.

Sam Millsap, Jr., Margaret Embry, Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a conviction for the offense of murder. Defendant was found guilty by a jury which assessed his punishment at 99 years' confinement.

Defendant first complains of the State's use of his post-arrest, post-Miranda silence for impeachment. Following a motion to suppress hearing out of the presence of the jury the trial court cautioned the State's witnesses not to refer to the defendant's post-arrest silence. In the presence of the jury, in response to the question by the prosecutor "At which point what did you do," Detective Tart testified as follows:

> By this time, Bonny had come out of the restroom, we sat her down on the bed next to Wayne, Detective Thomas removes his right card, reads them their rights, asked them if they have any statements to make, which there was no response.

The defense attorneys objected to the detective's remark, claiming that it was a comment on the defendant's Fifth Amendment right and a violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The trial court sustained the objection and instructed the jury to disregard the statement. The defendant's request for mistrial was denied. *Doyle* does hold that it is fundamentally unfair and a deprivation of due process to allow an arrested person's silence to be used to impeach an explanation subsequently offered at trial. *Id.* at 611, 96 S.Ct. at 2241. *Doyle* and the Texas cases cited by defendant following it, *Cuellar v. State*, 613 S.W.2d 494 (Tex.Crim.App.1981) and *Franklin v. State*, 606 S.W.2d 818, 850 (Tex.Crim.App.1979), apply to situations where the accused remains silent after his arrest but at the trial testifies to exculpatory facts. Under those circumstances, it is impermissible for the prosecutor to use the defendant's previous silence to impeach his credibility. Here the prosecutor was not attempting to impeach the credibility of the defendant nor was he even soliciting a comment on the defendant's refusal to make a statement. The testimony of the detective was partially unresponsive. The unresponsive portion was admittedly prejudicial.

■ Where prejudicial information is inadvertently placed before a jury, the general rule is that an instruction by the trial judge to the jury to disregard such answer will be sufficient to cure any unresponsive answer. *Williams v. State*, 643 S.W.2d 136, 138 (Tex.Crim.App.1982). Under the facts of the case, the instruction cured any possible error. The first ground of error is overruled.

■ Under four grounds of error defendant next complains of a portion of the following jury argument made by the prosecutor during the punishment phase of the trial.

Now, this charge says here, if you wish, you can use voluntary intoxication as a mitigation of—to the penalty to be attached to this offense. This is within this charge.

Now, that's something I want to talk about. You know, this is not a case where, you know, these people were prescribed some diet pill by their doctor and the side effect send them berserko. These people knew what they were doing. This defendant knew. He was real good at it. In fact, he's the one that taught Bonny Gail Ford about it. Apparently started shooting preludin when she met him.

You know, I don't know how you feel about life or how you feel about Bexar County or what you see, but can you think of anything worse than a murder by a doper and that's what we've got. (Objection by Defense Attorney.)

Thank you. Are you going to excuse his conduct because he's a dope addict? Are you going to find this murder less reprehensible because he's a dope addict? You know, you've got that law and there is a reason for it. And I submit to you that one of the reasons for you— (Objection by Defense Attorney.)

I'll submit to you that it was his abuse, maybe, I don't know, but it really—it showed the lack of respect of the law to you. Now— (Objection by Defense Attorney.)

Ladies and gentlemen, if you want to come back with a verdict and you want to tell Waldo and you want to tell the prosecutor here and the State of Texas and all these people sitting out there, all of them there looking at you, what you think about a murder by a couple of people who are high on 'speed'— (Objection by Defense Attorney.)

Each objection complained that the prosecutor was asking the jury to consider other offenses in assessing punishment. The defendant relies on *Klueppel v. State*, 505 S.W.2d 572, 574 (Tex.Crim.App.1974), for the proposition that the State is not entitled to ask the jury to assess punishment for collateral crimes which may have been admitted in evidence and to add such punishment to the penalty assessed for the offense for which the defendant is on trial.

Considerable evidence was developed concerning the defendant and his companion using a quantity of illegal drugs on the day in question. Included in the charge to the jury at the end of the guilt/innocence phase of the trial were instructions that voluntary intoxication from any substance does not constitute a defense to the commission of crime. The charge to the jury on punishment included the following:

You are instructed that under our law neither voluntary intoxication nor temporary insanity of mind caused by voluntary intoxication shall constitute any defense to the commission of crime. Evidence of temporary insanity cause by voluntary intoxication may be considered in mitigation of the penalty attached to the offense.

By the term 'intoxication' as used here, is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

We do not view the above argument of the prosecutor as a request that the jury assess punishment to the defendant for use of illegal drugs in addition to the crime of murder. It was instead a legitimate effort on the part of the prosecutor under the evidence heard and the instructions received by the jury to state why voluntary

intoxication from the use of drugs should not be a mitigating factor in this particular trial. The jury could of course consider all the facts and circumstances surrounding the commission of the offense in determining the punishment to be assessed, and the prosecution could so argue. *Id.* at 574.

Grounds of error two, three, four and five are overruled.

■ In ground of error number six the defendant urges that fundamental error was committed by the trial court in submitting a charge to the jury on the law of murder which did not negate the question of sudden passion.

The State had shown by circumstantial evidence that the defendant and his companion Bonny Ford had been involved in the death of a woman, beaten with a hammer. The defendant's fingerprints were found on a beer bottle at the scene. Ford's purse and her footprint were found at the scene. Police found clothes in the motel room occupied by the defendant and Ford containing bloodstains of the same blood type as the deceased. Defendant had scratches on his hands and on his back. Ford testified that she had knocked the deceased down, choked her, and hit her in the head with a hammer and that the defendant had only helped her move the body. The defendant's version was that he was struggling with the deceased when Ford hit her with the hammer. He admitted hiding the body.

There was no evidence from any source that the defendant was under the influence of sudden passion arising from an adequate cause. Bonny Ford testified that she was angry with the deceased because the deceased had fired her on a prior occasion and was keeping a Backgammon game of the defendant's as security for an alleged debt. Ford's explanation for her anger was, "there is just a whole lot more to it than the fact that she lost two pieces out of my Backgammon board, there really is. And I could not have been more angry with that lady."

If Bonny Ford was under the influence of sudden passion, there is no evidence that it was the result of anything other than former provocation.

The defense did not object to the manner in which the court charged the jury on voluntary manslaughter or sudden passion. The charge was actually submitted in language similar to that requested by the defense.

The jury was instructed on the law of criminal responsibility for conduct of another. The portion of the charge applying the law of murder to the facts did not negate the question of immediate influence of sudden passion. For that reason the defendant contends that the charge was fundamentally defective under *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Crim.App.1983). *Cobarrubio* would have required a reversal, but it has since been modified by *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1985) and *Lawrence v. State*, 700 S.W.2d 208 (Tex.Crim.App.1985). In *Almanza* the Court of Criminal Appeals concluded that if the defendant claims error in the charge not identified at trial by appropriate objection, there will be a reversal only if the error deprived the defendant of a fair and impartial trial, i.e., "egregious harm." The degree of harm "must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza* 686 S.W.2d at 171.

Reviewing all of the evidence on the issues of sudden passion and adequate cause indicates that it is a very close question as to whether the trial judge need have charged on voluntary manslaughter at all. As set out above, there is no evidence that raises the issue of sudden passion on the part of the defendant. The only possible way would be through the derivative responsibility of the defendant for the conduct of Ford. Ford repeatedly testified that she was mad at the complainant—once describing it as "in a rage." But the only

sudden passion that would reduce murder to voluntary manslaughter is that described in article 19.04(b) as "directly caused by an arising out of provocation by the individual killed ... which passion arises at the time of the offense and is not solely the result of former provocation." There is no evidence of provocation at the time of the offense, only that relating to the previously held Backgammon game and Ford being discharged from her job by the deceased on prior occasions. The Court of Criminal Appeals stated in *Lawrence*, "While former provocation, standing alone, will not suffice, *see* V.T.C.A. Penal Code § 19.04(b) *supra*, former provocation along with a showing of a defendant's agitated state of mind will raise the issue." *Lawrence v. State*, 700 S.W.2d 208, 210–11 (Tex.Crim.App.1985). Were it not for this recent pronouncement by the Court of Criminal Appeals, we would hold that the issue of sudden passion had not even been raised by the evidence and therefore no error could emanate from the charge.

The jury summation of counsel is revealing. The position of the defendant was that Ford alone committed the offense, and he neither solicited, encouraged, directed, or aided in the commission of the offense. The defense attorney argued,

> Now, what the evidence is, I think is that he didn't do anything of his own—on his own or of his own volition to commit this offense.... I think that the defendant is not guilty as a party and he's not guilty as a person who did the act himself.... We have some lesser included offenses in there. I don't have time to go over each and every one of them with you. We have voluntary manslaughter, involuntary manslaughter, criminal negligent homicide. I don't think he's guilty of any of those either. I really don't.

He discusses further the issues under criminal negligent homicide, but no further reference is made to voluntary manslaughter.

The State's attorney took the position throughout that the offense was murder and nothing else.

After a review of the entire record we conclude that voluntary manslaughter was an incidental theory of defense as in *Lawrence*. This is understandably so since the case was tried before the decision in *Cobarrubio*. To quote from *Lawrence:*

> [T]he subtle deletion of the State's burden of proof on the absence of sudden passion in the murder application paragraph cannot realistically be construed to inure to the defendant's egregious harm. Under these circumstances, we cannot say that the unobjected-to jury charge error was so 'egregious and created such harm that [appellant] has not had a fair and impartial trial.' *Lawrence v. State*, 700 S.W.2d at 213.

The sixth ground of error is overruled.

The seventh ground of error is that the State failed to comply with the Texas Speedy Trial Act. TEX. CODE CRIM.PROC.ANN. art. 32A.02 (Vernon 1979). The defendant was arrested September 2, 1980, which constituted the commencement of the criminal action under article 32A.02, § 2(a). The State filed a written announcement of ready on December 11, 1980, well within the statutory 120-day requirement. This announcement was *prima facie* evidence of conformity with the Act. *Fraire v. State*, 588 S.W.2d 789, 791 (Tex.Crim.App.1979). It then became incumbent on the defense to rebut the *prima facie* case. *Mendoza v. State*, 636 S.W.2d 198, 201 (Tex.Crim.App.1982).

The defense called the assistant district attorney as a witness. He testified that he had reviewed the case file and determined that he could prove a *prima facie* case using only police officers. He reviewed a police roster and concluded that the officers would be available. The defense emphasized that the assistant district attorney never personally interviewed the witnesses. A showing that the prosecution has not conducted personal witness interviews will not rebut the presumption of *prima facie*. *Brown v. State*, 667 S.W.2d 630, 632 (Tex.App.—Fort Worth 1984), *Aff'd*, 692 S.W.2d 497 (Tex.Crim.App.1985). The defense offered no further evidence

rebutting the State's announcement of ready. The seventh ground of error is overruled.

Grounds of error eight through sixteen complain of the trial court impermissibly commenting upon the weight of identification evidence presented by the State. The facts in each of the nine grounds of error are that a State's witness identified the defendant in the courtroom, and the prosecutor requested that the record reflect that the witness had so identified the defendant. The court then replied, "the record will so reflect," or words to that effect. The defense cites TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1966). "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same ..."

■■■ In order to constitute reversible error for violation of art. 38.05, the comment of the judge must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Davis v. State,* 651 S.W.2d 787, 789 (Tex.Crim. App.1983). Neither was the situation here. It was instead appropriate action by the State's counsel and the court to show in the record what actually happened in the courtroom without dispute. In doing so, the court was merely following the procedure recommended by the Court of Criminal Appeals. *Rohlfing v. State,* 612 S.W.2d 598, 601 (Tex.Crim.App.1981). Grounds of error eight through sixteen are overruled.

■■■ In ground of error seventeen the defendant complains of the failure by the trial court to give his requested instructions to the jury on the defensive theory of lack of common design. The charge as requested would have amounted to a comment on the evidence in violation of TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1975). The court did charge the jury affirmatively on the requested defensive theory.

The charge essentially contained all proper matters requested in the defendant's requested charge. No harm is shown. *Kemper v. State,* 643 S.W.2d 758, 760 (Tex.

App.—San Antonio 1982, no. pet.). The ground is overruled.

■■■ Ground of error eighteen complains of the trial court refusing to give the following requested jury charge:

Before one may be guilty as a party when actually present, one must, at the very least, encourage the commission of the offense by words, or other agreement. Any such agreement must be prior to or contemporaneous with the criminal event.

As authority for requiring that such charge should have been given the defendant cites *Urtado v. State,* 605 S.W.2d 907, 911 (Tex. Crim.App.1980) and *Suff v. State,* 531 S.W.2d 814, 817 (Tex.Crim.App.1976). Each of these cases contains the quoted language in the opinion as pronouncements of law not as a portion of the charge. Neither of the cases was reversed for jury charge error. Instead they were reversed for insufficient evidence of common purpose or design. Here there was evidence that the defendant gave aid to Ford contemporaneous with the homicide.

The court explained in the charge to the jury the law of parties to offenses and criminal responsibility for conduct of another using the language of TEX. PENAL CODE ANN. § 7.01(a) and (b) and § 7.02(a)(2) (Vernon 1974). The law was then applied to the facts in the following manner:

Now, if you find from the evidence beyond a reasonable doubt that in Bexar County, Texas, on about the second day of September, 1980, Bonny Gail Ford, did intentionally or knowingly cause the death of Yong Choi by striking her with a hammer and that the defendant, Wayne Dotson Waldo, knew of the intent, if any, of the said Bonny Gail Ford to strike the said Yong Choi with a hammer and acted with intent to promote or assist the commission of the offense by Bonny Gail Ford by encouraging her, directing her, aiding her, or attempted to aid Bonny Gail Ford to commit the offense of murdering Yong Choi, then you will find defendant, Wayne Dotson Wal-

do, guilty of murder as charged in the indictment. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant.

The charge required the jury to find that the defendant aided Ford *"to commit the offense."* This necessarily required the conduct found to have occurred prior to or contemporaneous with the commission of the offense. The ground of error is overruled.

■ Ground of error nineteen complains of the admission into evidence of two laboratory reports containing blood analysis and comparison tests between the blood of the victim and blood found on the defendant after his arrest. The State offered the exhibits pursuant to the Texas Business Records Act. TEX.REV.CIV.STAT. ANN. art. 3737e (Vernon Supp.1984). The serologist who prepared the reports was not available. The predicate was testified to by the supervisor of the Crime Laboratory of the City of San Antonio. He testified the laboratory reports were made in the normal course of business for the laboratory, that they were made by an individual who worked under his supervision and who had personal knowledge of the event and that the record was made at or near the time of the event. He also testified that he was the Custodian of the Records. The defendant does not contend that there were any omissions from the necessary predicate for admission of the exhibits under art. 3737e. The objection is to the deprivation of the right of confrontation and cross-examination of the witness who prepared the exhibits. There was no testimony that the exhibits were prepared solely for this criminal prosecution rather than in the course of business of the crime laboratory. The exhibits bear sufficient indicia of reliability and trustworthiness as to accord the same protection provided by the constitutional rights of confrontation. *Garcia v. State,* 634 S.W.2d 888, 892 (Tex. App.—San Antonio 1982, no pet.). The ground of error is overruled.

■ Ground of error twenty complains that the court's charge on punishment did not apply the law of temporary insanity caused by voluntary intoxication to the facts. The defense requested an instruction which was in accord with TEX. PENAL CODE ANN. §§ 8.01 and 8.04 (Vernon 1974), *Madden v. State,* 628 S.W.2d 161, 162 (Tex.App.—Eastland 1982, pet. ref'd). The proper place for a charge on temporary insanity caused by intoxication is during the punishment phase of the trial. *Rodriguez v. State,* 513 S.W.2d 594, 595 (Tex.Crim.App.1974).

The portion of the charge on punishment relating to these issues is set out earlier in the opinion.

■ We are not cited to a Texas case where a conviction was reversed for failure to have a paragraph in the charge applying this law to the facts in the particular case. More importantly, we are not directed to any place in the record of testimony that as a result of intoxication either the defendant or his companion did not know that his conduct was wrong or that he was incapable of conforming his conduct to the requirements of the law he violated. Though there is ample evidence of intoxication from alcohol and drugs, there is no testimony to raise the issue of temporary insanity. *Hart v. State,* 537 S.W.2d 21, 24 (Tex.Crim. App.1976). We reject the defendant's contention that the court erred in failing to grant his requested charge.

For the same reason grounds of error twenty-one and twenty-two relating to requested jury charges on Bonny Ford's temporary insanity resulting from voluntary intoxication are overruled.

The judgment of conviction is affirmed.

CADENA, C.J., dissents.

CADENA, Chief Justice, dissenting.

I cannot agree that the instruction cured the prejudicial effect of the statement by the witness for the State which called defendant's silence to the attention of the jury.

Even if the reasoning in *Williams v. State*, 643 S.W.2d 136 (Tex.Crim.App.1982) were persuasive, that decision is not controlling under the facts in this case. One of the "unique facts" which the *Williams* opinion relies on is that the defendant in that case did not testify. *Id.* at 138. In this case the defendant did testify.

The reasoning in *Williams* is contained in the following statement:

> In this cause, in light of the facts adduced, the fact that appellant did not testify or offer any evidence, and the additional fact that appellant's having previously been sentenced to the penitentiary was absolutely and totally irrelevant and immaterial to any issue of the case, we are able to conclude that the unresponsive answer of the witness, Chambers, was error. We further hold that such error was not curable by the instruction that trial judge gave to the jury. However, we also reluctantly hold that the error was not reversible error because of the harmless error doctrine of law. *See Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705 (1967). We are unable to state that there is a reasonable possibility that the part of the unresponsive answer of Chambers, which reflects that the appellant previously had been sentenced to the penitentiary, affected either the jury's verdict of guilt or the punishment assessed.

*Id.*

The Court explains its holding as follows:

1. The defendant did not testify and offered no evidence. As already pointed out, in the case before us appellant did testify.

2. The error was not curable by the instruction to disregard. In prior portions of the *Williams* opinion the court referred to cases holding, as does the majority opinion in this case, that the unresponsive portion of the answer of the witness was admittedly prejudicial. It is difficult to understand how prejudicial error which cannot be cured by an instruction can be held to be "harmless error."

3. It seems that the *Williams* opinion accords not a little weight to the fact that the inadmissible testimony was blurted out by a witness in the form of an unresponsive answer and was not intentionally elicited by the prosecuting attorney. Apparently, whether the prejudicial statement constitutes reversible error depends upon whether the prosecution is responsible for presenting it to the jury. There are some who might argue that the important consideration in determining whether the presentation of evidence is harmful does not depend on the degree to which the district attorney is at fault, since the purpose of a reversal is not to punish the prosecutor but to attempt to secure a fair trial to the accused. The damage from testimony such as that involved in *Williams* and in this case results from the nature of the testimony itself, without reference to the participation of the prosecution in calling it to the jury's attention. In *Williams* the jury was told that the defendant had committed at least one other crime. The fact that such information was contained in an unresponsive answer does not reduce its harmful effect.

The *Williams* rationale is not easily accepted. The argument that prejudicial error which cannot be cured by an instruction is, nevertheless, harmless because the defendant did not testify and it resulted from an unresponsive answer for which the prosecutor cannot be blamed does not overwhelm one with the force of its logic.

*Williams* does not hold, as the majority opinion would have us believe, that, as a general rule, where prejudicial evidence is given to a jury inadvertently, the error is cured by an instruction to disregard. The *Williams* opinion makes only one statement with reference to the effect of an instruction in such a case, and that statement is simply that such error was not curable by the instruction. *Id.* at 138.

Another interesting aspect of the *Williams* opinion is the fact that, in declaring the prejudicial incurable error harmless, the Court said that it could find no reason-

able possibility that the testimony concerning the defendant's prior conviction affected either the verdict of guilt or the punishment assessed. Since the sentence was based on two prior felony convictions, there is, perhaps, no possibility that the inadmissible testimony could have affected the jury's determination of guilt or innocence, since the life sentence was mandatory. The evidence, as summarized in the opinion, was that "someone" stole a car from a dealer's lot, and that some 10 days later defendant was arrested after he had been seen driving what proved to be the stolen vehicle. Assuming that the summary of the evidence is fair, the conviction rested on the fact that on one occasion, less than 10 days from the date of the theft, defendant was seen driving the stolen car. The conviction was based, according to the resume in the opinion, entirely on circumstantial evidence and the so-called presumption that possession of recently stolen property supports an inference of guilt. Under these circumstances, it is hard to accept a conclusion which gratuitously asserts that there is no reasonable possibility that the jury's verdict was affected by evidence tending to show that the defendant had a propensity for criminal acts.

In the case before us, appellant's co-defendant gave testimony which tended to show that appellant did nothing which led to the death of the victim, merely helping move the body after the co-defendant had killed the victim. Appellant testified only that he was struggling with the dead woman when his co-defendant struck the deceased on the head with a hammer. Given such testimony, there is no basis for holding that it is impossible to say that there is a reasonable possibility that the unresponsive answer, which called the jury's attention to the fact that appellant had offered no exculpatory statements previously, contributed to the finding of guilt.

I would reverse the conviction and remand the cause for a new trial, particularly in view of the fact that even if we are willing to accept the unusual reasoning in *Williams*, that case is distinguishable since here the appellant testified.