Thomas Warren ABBOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–85–0240–CR.

Court of Appeals of Texas,
Amarillo.

March 24, 1987.

Rehearing Denied April 16, 1987.

George E. Gilkerson, Ralph H. Brock, Lubbock, for appellant.

Roland Saul, Crim. Dist. Atty., Richard Burmeister, Asst. Crim. Dist. Atty., Hereford, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

A jury convicted appellant Thomas Warren Abbott of the aggravated robbery for which he was indicted and, rejecting his application for probation, assessed his punishment at 13 years confinement in the Texas Department of Corrections. Appellant utilizes seven grounds of error[1] to

---

1. Appellant's brief was filed before 1 September 1986, the date on and after which contentions relied upon in appeals in criminal cases are to be expressed as points of error. Tex.R.App. Proc. 74(d). However, in the interest of uniformity with the brief, this opinion will refer to appellant's contentions as grounds of error.

contend, respectively, that (1) the evidence is insufficient to support an aggravating element alleged in the indictment, (2–3) prejudicial evidence was erroneously admitted, and (4–7) he was denied effective assistance of trial counsel. We will overrule the grounds of error upon the rationale expressed, and affirm.

A person commits a robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he

> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex.Penal Code Ann. § 29.02(a) (Vernon 1974).[2] The robbery becomes aggravated if the person

> (1) causes serious bodily injury to another; or
>
> (2) uses or exhibits a deadly weapon.

Section 29.03(a).

In this prosecution, the indictment contains the allegation that the robbery appellant was charged with committing was aggravated by his

> using and exhibiting a deadly weapon, to-wit: a firearm, that in the matter [*sic*] and means of its use and intended use could cause serious bodily injury and death.

The jury found appellant "Guilty as charged in the indictment of aggravated robbery."

▆▆▆ To charge the aggravation element, the allegation of "using and exhibiting a deadly weapon" was all that was necessary. Section 29.03(a)(2); *Gomez v. State*, 685 S.W.2d 333, 336 (Tex.Cr.App. 1985). Thus, the State was not required to include the descriptive allegation of the deadly weapon as "a firearm, that in the matter [*sic*] and means of its use and intended use could cause serious bodily injury and death." Yet, having alleged the unnecessary description of the deadly weapon, the State was required to prove it beyond a reasonable doubt. *Gomez v.*

*State, supra; Weaver v. State*, 551 S.W.2d 419, 421 (Tex.Cr.App.1977).

Appellant contends, with his first ground, that the State failed to prove the descriptive allegation of the deadly weapon. Our inquiry then is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt that appellant used and exhibited "a firearm, that in the [manner] and means of its use and intended use could cause serious bodily injury and death." *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Cr.App.1981).

The evidence reveals that appellant entered a convenience store in Hereford, "pulled out a gun," and told Norma Reyes, the clerk, to give him the money, but he did not make any verbal threat. When appellant pointed the gun at Reyes, she felt "scared," acknowledging that she was "afraid" she "might be hurt or shot or killed." Appellant left the store with the money, and Reyes summoned the police.

Reyes said she described the gun to the police as "black with a round cylinder thing." She thought "it was a small—not small, a regular sized gun" and, denying she told the police it was a small gun, said, when asked to describe the size of the gun, that "[i]t was a gun, a handgun, and it wasn't a rifle, it was a gun." However, the officer to whom she gave the description testified that Reyes said "it was a handgun and she couldn't describe it to any length, she couldn't give me a color or anything." He recorded that the gun was "a small handgun," believing the word "small" was Reyes' own word.

The next day, appellant was arrested and gave his consent for police to search his residence in Tulia. As a result of the search, the police seized a Colt .357 revolver, characterized by the testifying officer as a gun. It was stipulated that the Colt .357 revolver "qualifies as a deadly

---

**2.** All references to sections are to the sections of the Texas Penal Code Annotated (Vernon 1974).

weapon as that term is defined by Sec. 1.07(11) [1.07(a)(11) ], Texas Penal Code." [3]

The officer to whom Reyes described the gun appellant used said he would describe the Colt .357 revolver as a handgun, but "it's not a small gun," it does not look like a small handgun and it is an extremely big caliber for a handgun. However, he conceded that the revolver would be a small handgun compared to other handguns, and that a small handgun is just in the eye of the beholder.

When shown the Colt .357 revolver and asked if it looked like the gun used, Reyes replied, "It could have been, it looks like it," and acknowledged that it was a small gun to her. She readily admitted that she did not definitely know it was the gun used, agreeing that it just looks like the one used and meets the description of the gun she remembers when she saw it on the day of the robbery.

Given this state of the evidence, appellant argues that Reyes was the only person who saw the weapon used, and that there is nothing in her testimony to show the gun was in condition for use as a firearm, particularly since Reyes was not injured or verbally threatened and there is no evidence to show the gun was loaded. Thus, he concludes, even though the State proved the use of a gun, which is not a deadly weapon per se, *Ex parte Grabow*, 705 S.W.2d 150, 151 (Tex.Cr.App.1986), it failed to prove its descriptive allegation of "a firearm, that in the matter [*sic* ] and means of its use and intended use could cause serious bodily injury and death." We are not in accord.

■ By returning its verdict of guilty "as charged in the indictment of aggravated robbery," the jury necessarily found the challenged element of the descriptive allegation beyond a reasonable doubt. To make the finding, the jury was privileged to judge the credibility of the witnesses and the weight to be given their testimony, believing those portions of the testimony it deemed most credible. *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex.Cr.App.1974). As a consequence, the jury was entitled to believe Reyes' testimony that the gun appellant used and exhibited "looks like" and "could have been" appellant's Colt .357 revolver, as well as her agreement that the gun used looked just like and met the description of his revolver. Appellant's Colt .357 revolver was stipulated to qualify as a deadly weapon which, by definition, includes one "that in the manner of its use or intended use is capable of causing death or serious bodily injury." Then, the evidence obviously credited by the jury is sufficient in law to uphold the jury's challenged finding. The first ground of error is overruled.

During the guilt-innocence phase of the trial, Tom Timberlake testified appellant told him that he, appellant, had committed the robbery. On cross-examination, Timberlake admitted that he was under indictment in Tulia, Swisher County, for a first degree felony, and that appellant was a potential witness against him.

In a dialogue between the trial court and counsel out of the hearing of the jury, they first discussed whether appellant had opened the door for asking Timberlake if both he and appellant were indicted in the case and they both were potential witnesses against each other. Upon appellant's objection, the court opined that the door had not been opened to show an extraneous offense and sustained the objection to asking the questions. Later in the discussion, when the district attorney asked for a ruling whether he could ask Timberlake if he also is a witness against appellant in the Tulia case, the court again stated the belief that appellant had not opened the door to showing an extraneous offense; but, after being assured by the district attorney that he was not trying to get into an extraneous offense and upon reviewing the record, the court announced its ruling was reversed

---

**3.** The referenced section is in this language:
(11) "Deadly weapon" means:
 (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

 (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

and the district attorney would be allowed to ask Timberlake "that question." Appellant's counsel began speaking to "clarify one point for the record," but was interrupted by the court's announcement that the ruling will stand and "I don't want to hear further argument."

Thereupon, Timberlake was examined in the presence of the jury as follows:

Q [by the district attorney] But Mr. Timberlake, isn't it true that you are both indicted on a case in Tulia, Texas?

A Yes, sir.

Q You are both potential witnesses against each other?

A Yes, sir.

Appellant did not lodge any further objection to the examination or request any relief.

With his second ground, appellant charges the court with error in overruling his objection and permitting Timberlake to testify that he, appellant, had been indicted in a pending case. We cannot agree there is error.

A careful reading of the recorded dialogue between the court and counsel reveals that the court sustained appellant's objection to the district attorney's proposal to ask Timberlake if it isn't true that he and appellant were both indicted on the Tulia case and are both potential witnesses against each other. When pressed for a ruling whether the witness could be asked if he also was a witness against appellant in the Tulia case, the court, after initially indicating disapproval, stated it would allow "that question," referring to the query whether Timberlake also is a witness against appellant in the case in Tulia. Notwithstanding, the district attorney first asked the prohibited question—*i.e.,* "isn't it true that you are both indicted on a case in Tulia, Texas"—which appellant now contends was reversible error.

The situation presented, then, is not one where the court has ruled in a hearing out of the jury's presence that testimony is admissible, thereby rendering it unnecessary to repeat the objection when the testimony is offered before the jury. Tex.R. App.Proc. 52(b); *Maynard v. State,* 685

S.W.2d 60, 64–65 (Tex.Cr.App.1985). That situation exists with respect to the inquiry about the witness and appellant being potential witnesses against each other; however, that inquiry is not the basis of appellant's ground of error.

■ Rather, the situation is one where outside the jury's presence, the court sustained appellant's objection to the proposed question of appellant's indictment in the Tulia case; yet, in violation of the court's ruling, the exact question was asked and answered before the jury without any objection or request for relief. In this situation, appellant was required to secure a ruling adverse to him in order to preserve his appellate contention. *Stanfield v. State,* 450 S.W.2d 635, 637 (Tex.Cr.App. 1969). *Cf. Brazzell v. State,* 481 S.W.2d 130, 131 (Tex.Cr.App.1972) (holding that for error to be preserved on appeal with regard to admission of evidence in violation of a ruling on a motion in limine that the evidence is inadmissible, an objection should be made at the time the evidence is offered). Appellant failed to object and receive an adverse ruling, by virtue of which he waived any error in the admission of the evidence bearing on an extraneous offense. *Smith v. State,* 595 S.W.2d 120, 123 (Tex.Cr.App.1980); *Von Byrd v. State,* 569 S.W.2d 883, 897–98 (Tex.Cr.App.1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073, *reh'g denied,* 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 123 (1979). The second ground is overruled.

After appellant testified at the punishment phase of the trial, the State recalled Billy Cogdell, a rancher for whom appellant had worked. When Cogdell was asked if he knew the reputation of appellant for truth and veracity in the county, he replied, "Well I do from the standpoint that he stole a lot of dollars worth of cattle from me." Appellant's objection was sustained, but his motion for mistrial was denied.

■ By his third ground, appellant submits that the court erred in refusing to grant a mistrial. In this regard, he recognizes that the proper method to preserve error in pursuing his objection to an ad-

verse ruling is (1) to make an objection, (2) request an instruction to disregard, and (3) move for a mistrial. *Koller v. State*, 518 S.W.2d 373, 375 n. 2 (Tex.Cr.App.1975). He further recognizes that if an instruction could have cured the harm, no error is shown when the objection was sustained and he moved directly for a mistrial, *see Johnson v. State*, 583 S.W.2d 399, 406–07 (Tex.Cr.App.1979), unless the error is not curable by an instruction. *See Williams v. State*, 643 S.W.2d 136, 138 (Tex.Cr.App. 1982). However, he contends that Cogdell's unresponsive answer was so prejudicial that an instruction to disregard would have been useless. We cannot agree.

▪ As noted in *Williams*, the general rule still is that an instruction by the court for the jury to disregard the unresponsive answer will be sufficient to cure the error. *Id.* The requirement of the request for an instruction is dispensed with only when the unresponsive answer, considered in context of the facts of the case, is so inflammatory or prejudicial that its effect cannot be removed by a proper instruction. We do not consider Cogdell's answer to present that situation. Rather, we consider the situation presented here to be one where the effect of his unresponsive answer was curable by a proper instruction as in *McWherter v. State*, 607 S.W.2d 531 (Tex.Cr.App. 1980). There, during the trial leading to defendant's conviction of aggravated robbery and the assessment of punishment at life imprisonment, the unresponsive answers of two witnesses attributing to defendant the shooting at a bailiff, robbery, and rape were held curable by instructions to disregard the answers. *Id.* at 535–36.

Accordingly, the court did not reversibly err in denying appellant's motion for mistrial. His third ground of error is overruled.

With his remaining grounds of error, grounds four, five, six, and seven, appellant contends that he was denied effective assistance of counsel. This occurred, he presents, because his trial counsel failed (1) to object to the court's charge and to request a limiting instruction on extraneous offenses at the guilt stage, and (2) at the punishment stage, (3) to seek discovery of potentially exculpating evidence held by the State, and (4) to request a hearing to evidence a pre-trial agreement to dismiss the prosecution. Under the standards by which the contentions are measured, we cannot agree that appellant has shown he was denied effective assistance of counsel.

We begin by acknowledging that appellant is entitled to counsel rendering reasonably effective assistance as judged by the totality of representation at the time of trial, not by isolated acts or omissions or through hindsight. *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Cr.App.1986). To show that he was denied effective assistance of counsel, appellant must prove that (1) his counsel's performance was deficient, which (2) prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

▪ For his contentions, appellant selects four acts of omission by his counsel as constituting the denial of effective assistance. The first two of these, counsel's failure to object to the court's charges and to request limiting instructions on extraneous offenses, are said to be in derogation of appellant's right to an instruction limiting the jury's consideration of the extraneous offenses to those purposes for which they were admitted. *Hitchcock v. State*, 612 S.W.2d 930 (Tex.Cr.App.1981). The difficulty of claiming the right in this case is that the two extraneous offenses mentioned were not admitted for the legitimate purpose of proving an issue in the case; instead, the first one was introduced in violation of the court's ruling, and the other was contained in the unresponsive answer of a witness. Although hindsight speculation may suggest a limiting instruction of some nature, it is reasonable that, as a trial tactic, counsel did not wish to remind the jury of those matters. In this light, the omissions did not render counsel ineffective. *Johnson v. State*, 629 S.W.2d 731, 736 (Tex.Cr.App.1981).

▪ The gist of the next contention, that trial counsel failed to seek discovery, is that discovery would have revealed a

police report, which appellant says counsel did not learn about until trial, that showed photographs were taken of some tire tracks and foot prints on the west side of the convenience store and near the alley, the location from which Reyes said the get-away vehicle departed. Since the photographs were not in evidence, appellant suggests they were adverse to the State's position, and argues that they were discoverable to produce potentially exculpatory evidence by determining whether the tire tracks matched those on appellant's car, which did not meet the description Reyes gave of the get-away car. However, this contention of counsel's shortcoming is untenable, for the police report, being the work product of the police, was exempt from pre-trial discovery. *Brem v. State*, 571 S.W.2d 314, 322 (Tex.Cr.App.1978).

The last contention of unprofessional conduct, that trial counsel failed to request a hearing to evidence a pre-trial agreement to dismiss the prosecution, is founded on a misperception of the record. Pre-trial, appellant's counsel orally moved for a dismissal. He based the motion on an alleged agreement, express or implied, with the district attorney's office. He represented the agreement as providing that if appellant would take and pass a polygraph examination, which he did, the district attorney would "believe him." In making the motion, counsel candidly conceded that the word "dismissal" was not used, and the district attorney expressly denied there was any agreement that the case would be dismissed. The court denied the motion.

Appellant now faults his counsel for not requesting a hearing and adducing evidence to resolve the fact issue whether the parties entered into a plea bargain, implying on the authority of *Ex parte Williams*, 637 S.W.2d 943, 948 (Tex.Cr.App.1982), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1336 (1983), that the State is bound to carry out the bargain. He asserts that the trial court did not, nor purport to, decide the issue. We are not persuaded to appellant's view.

■ On this record, the most that appellant could establish at a full hearing

would be that upon his passing the polygraph examination, the district attorney would "believe him." The establishment of that fact is not tantamount to showing a plea bargain, which consists essentially of the prosecutor making concessions regarding specific punishment or the reduction of charges in exchange for defendant's concession to plead guilty or nolo contendre. 637 S.W.2d at 947. Just as an accused has no constitutional right to demand that the State enter into a plea bargain, *Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Cr.App. 1984), he has no right to dictate the terms of an agreement, plea bargain or otherwise. *Ex parte Williams, supra*, at 948; *Quinones v. State*, 592 S.W.2d 933, 941 (Tex.Cr.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121, *reh'g denied*, 449 U.S. 1027, 101 S.Ct. 600, 66 L.Ed.2d 490 (1980). It is not for the court either to speculate why the recited communication was couched in the terms used or to intervene in the process to fashion an agreement for the parties. *Quinones v. State, supra*. Given this perspective, the trial court effectively decided the issue, and appellant's counsel cannot be blamed for not uselessly pursuing the matter further.

Moreover, in considering the charged omissions in connection with the totality of counsel's representation at the time of trial, it does not escape notice that the State urged the jury to assess punishment at confinement for more than fifteen years and up to, and including, life, and appellant received a lesser punishment of thirteen years confinement after being positively identified as the robber using a deadly weapon. This reality, coupled with appellant's failure to establish unprofessional acts on the part of his counsel, demonstrates that he has failed to prove he was denied effective assistance of counsel. *Howell v. State*, 563 S.W.2d 933, 937 (Tex. Cr.App.1978). Grounds of error four through seven are overruled.

The judgment is affirmed.