James Wayne BURTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–91–00034–CR.

Court of Appeals of Texas, El Paso.

April 15, 1992.

Paul Williams, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for the State.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a conviction for the offense of delivery of a simulated controlled substance. The court assessed punishment at 5 years' imprisonment and a fine of $1,000. The court retained jurisdiction of the cause for 180 days pursuant to Tex.Code Crim.Pro.Ann. art. 42.12, § 6(a) (Vernon Supp.1992)—shock probation. We affirm.

In his first point of error, the Appellant contends that his prosecution under the delivery of a simulated controlled substance statute constituted cruel and unusual punishment. The theory of the State's case was that the Appellant acted as a party to the delivery of the simulated controlled substance, the primary actor being an individual named Thomas Lee Shaw. The Appellant asserts that his sentence in the present case was excessive, citing *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct.

2565, 2570–71, 57 L.Ed.2d 522, 531 (1978), for the proposition that the Eighth Amendment's ban on inflicting cruel and unusual punishments prohibits penalties that are grossly disproportionate to the offense. *Hutto* involved the system of punitive isolation utilized by the Arkansas prison system, and consequently, the facts in that case are radically dissimilar to the situation in the instant case.

The Appellant has contended that he is guilty only of the commission of the offense of misdemeanor theft in that he assisted Shaw in selling worthless powder for $20, without the officer's effective consent. The Appellant further reasons that insofar as his role in the misdemeanor theft violation was limited to that of a party, the sentence imposed is excessive. The Appellant provides no authority for this proposition other than the *Hutto* case.

■ Generally, a sentence within the statutory range of punishment does not constitute cruel and unusual punishment and is not excessive. *Samuel v. State*, 477 S.W.2d 611, 614 (Tex.Crim.App.1972). The offense of unlawful delivery of a simulated controlled substance is a felony of the third degree. Tex.Health & Safety Code Ann. § 482.002 (Vernon Pamphlet 1992).[1] Point of Error No. One is overruled.

In Point of Error No. Two, the Appellant asserts that the court erred in failing to grant two challenges for cause during voir dire.[2]

■ At the outset, we note that the Appellant has failed to preserve any error for review. In order to warrant a reversal for the trial court's erroneous denial of an appellant's valid challenge for cause, it must be demonstrated that:

(1) The voir dire of the individual venireperson was recorded and transcribed.
(2) The appellant at trial asserted a clear and specific challenge for cause clearly articulating the grounds therefor.
(3) After the challenge for cause is denied by the trial court, appellant uses a peremptory challenge on that juror.
(4) All peremptory challenges are exhausted.
(5) When all peremptory challenges have been exhausted, appellant makes a request for additional peremptory challenges.
(6) Finally, the defendant must assert that an objectionable juror sat on the case. The appellant should point out to the trial court that he is being forced to try the case with a juror seated whom he would have exercised a peremptory challenge had he had one.

*Harris v. State*, 790 S.W.2d 568, 581 (Tex. Crim.App.1990).

During the selection of the jury, the following exchange took place:

DEFENSE: Now, in that regard, there's going to be probably two or three police officers testifying in this case. And there's going to be—Oh, two, three or four non-police [sic] officers testifying in this case. How many of you all think that police officers are

---

1. An individual adjudged guilty of a felony of the third degree in the State of Texas shall be punished by confinement in the institutional division of the Texas Department of Criminal Justice for a term of not more than 10 years or less than 2 years; or confinement in a community correctional facility for any term of not more than 1 year, and/or a fine not to exceed $10,000. Tex.Penal Code Ann. § 12.34 (Vernon Supp.1992).

2. Tex.Code Crim.Pro.Ann. art. 35.16(a)(9) (Vernon 1989) provides:

(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be

made by either the state or the defense for any one of the following reasons:

. . . . .

9. That he has a bias or prejudice in favor of or against the defendant.
Tex.Code Crim.Pro.Ann. art. 35.16(c)(2) (Vernon Supp.1992) provides:

(c) A challenge for cause may be made by the defense for any of the following reasons:

. . . . .

2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor.

more credible or more believable than non-police [sic] officers?

Ms. Fincher, you believe that the police officers are more credible than non-police [sic] officers?

JUROR: Yes, sir.

The following exchange then occurred at the bench:

DEFENSE: Ms. Fincher, I asked that you come up here because you said something earlier about you would tend to believe a police officer over a civilian witness; is that right?

JUROR: Yes, I think—Well, basic (sic) you're going to have a 50/50 chance either way you go. You know, because—I mean, what if I asked you would you believe a lawyer over a common citizen—I mean, you would want to tend to believe that this person is upstanding (sic) the law, you know, the State, and he would be a better judge or—

DEFENSE: When you said, "he," you mean a police officer?

JUROR: Yeah, a police officer.

DEFENSE: Okay. That's all I have, Your Honor.

STATE: Is your belief of police officers based on the fact that they're a type of observers and are, like you say, someone who the public generally looks up to and respects, or is it just blanket—that any—if he's a police officer, he's going to tell the truth?

JUROR: No, I don't believe that. I believe that he—Oh, that he is to tell the truth [sic] and that, you know, he is—Oh, I don't know how to say it.

STATE: Would you weigh and judge a police officer's credibility just like you would weigh and judge a civilian witness's credibility?

JUROR: Yes, I think I would.

STATE: So, if you didn't believe what a police officer said, you wouldn't just say, 'He's a police officer so I'm going to believe him,' would you?

JUROR: No, I wouldn't say that—I wouldn't say just because he's a police officer that he is telling the truth.

STATE: Okay, thank you.

.    .    .    .    .

DEFENSE: Ms. Fincher, let me ask just one more question. It's something I'm having trouble getting straight in my mind.

You said earlier that you would tend to believe that a police officer's [sic] more believable. And you just told [The State] that you would weigh a police officer's testimony the same way you would weigh anybody else's testimony.

JUROR: Well, the way you phrased your question was, like, anybody off the street. I mean, it was, like, if we were walking down the street and there was two people—there's a police officer and a civilian—and probably, I would—I would probably take the police office [sic] over the civilian if I was wanting a, you know, an answer to a question or, you know, in—in a case, you just really have to listen to the, you know, what everybody said—what each individual has to say.

COURT: Thank you, Ms. Fincher. Challenge for cause denied.

■ Prior to the swearing-in of the jury, the Appellant's counsel reurged his challenges for cause, stating that the two objectionable jurors were seated due to the exhaustion of his peremptory challenges. He requested two additional peremptory challenges. However, the Appellant never made a clear and specific challenge for cause which clearly articulated the grounds for the challenge. Consequently, any error as such is waived.

Again, during voir dire another exchange took place with a juror:

DEFENSE: Anyone else thinks that the indictment—this thing right here—is any indication of guilt? Any evidence of guilt? Please be honest. Yes, ma'am?

JUROR: Maybe not so much guilt, per se—that he has committed this crime, or whatever, but question—there's the big question mark.

DEFENSE: You're Ms. Boice, for the record?

JUROR: Yes.

DEFENSE: Yeah?

JUROR: Just, you know, might be like a shadow has been cast, or a question.

DEFENSE: And the fact that he's been indicted—do you think that that would—means that he should have to disprove anything, that he should have to prove that he didn't do it?

JUROR: Well, in a way you do.

DEFENSE: Okay.

.    .    .    .    .

JUROR: You know, even though you're supposedly innocent until proven guilty, you have that ultimate statement, but you still have—to some degree, remove this cloud.

At a conference at the bench, this juror was questioned further:

STATE: The Judge is going to instruct you that with the State having the burden of proof, that that means that the defendant doesn't have to prove— In fact, the State—

JUROR: True.

STATE: —has to prove him guilty. So, in other words, if I didn't adequately prove that it was James Wayne Burton aiding and assisting, then you would be required to not find him guilty. Or if I didn't adequately prove that Tommy Lee Shaw delivered to Jeff Darr, then you would be required to prove him not guilty—find him not guilty. The burden is not on the defense to prove his innocence. Could you follow that?

JUROR: Uh-huh, I could.

STATE: Then you would not require the defendant to take the stand; not require the defendant to call any witnesses of his own.

I mean, the defendant doesn't have to prove a thing.

JUROR: Right, that's why we have him.

STATE: That's right.

JUROR: Yes, here, he personally to do this. (Sic) I can accept that he not do that.

STATE: He might not take the stand— the defense might not call any other witnesses. It's up to the State to prove—

JUROR: Okay.

STATE: To give you the evidence—

JUROR: Uh-huh.

STATE: —not the defendant to disprove the evidence or—

JUROR: Right.

STATE: —disprove the charges.

JUROR: Right. Like I said, you know, the ultimate is innocent until proven guilty. And I understand that but you still—seems like somebody has pointed an accusing finger and then you have to sort of—I think, you know, the natural inclination is to want the defendant, himself, to take the stand and—

STATE: That's why we go over—

JUROR: —somebody has to, but, like I said, he certainly doesn't have to. You know, I wouldn't have any problem with that.

STATE: Thank you.

DEFENSE: May I ask you just—I'm sorry. When you said that somebody has to, you would then expect the defense to put on some sort of case—some sort of proof; is that right?

JUROR: Well, I think it would help—

DEFENSE: Okay.

JUROR: —but, like I say, it also has to, you know, depends on what kind of job the other side does.

DEFENSE: Well, we all know there's an indictment against my client. The fact that there is an indictment against him—would you consider that to be an indication of the evidence of guilt—

JUROR: No, not guilt. Just somebody sort of has a question and they've sort of, you know, they—

DEFENSE: All right.

JUROR: It doesn't mean that they're guilty.

COURT: Denied.

■ The Appellant argues that the court's denial of his second challenge for cause violated the provisions in Tex.Code

Crim.Pro.Ann. art. 35.16(a)(10) (Vernon 1989).[3]

In the present case, the juror never stated that she had come to any conclusion concerning the guilt of the accused. She agreed to hold the State to it's burden of proof and not to require the Appellant to disprove the charges.

During voir dire, it is the trial judge who reviews the answers of an equivocating venireman and who has the opportunity to observe the tone of voice and demeanor of the prospective juror in determining the precise meaning intended. *Garza v. State,* 622 S.W.2d 85, 92 (Tex.Crim.App.1981) (opinion on rehearing). We find that the trial court did not abuse its discretion in denying the challenge for cause. Point of Error No. Two is overruled.

In Point of Error No. Three, the Appellant maintains that the trial court erred in allowing hearsay statements into evidence prior to the trial court entering a finding of the existence of a conspiracy and that the statements were in furtherance of that conspiracy. Specifically, the Appellant contends that there was insufficient evidence of a conspiracy and the trial court failed to hold a hearing and make a finding with regard to the admissibility of the complained-of statements as being statements of a coconspirator.[4] In order to address Appellant's third point of error, a recitation of the facts is essential.

The State utilized the testimony of Jeff Darr—an undercover narcotics detective for the Midland Police Department. Detective Darr testified that on April 21, 1990, he and Detective Sheldon Johnson were working in an undercover capacity at the Bojangles Club in Midland, Texas. Detective Darr stated that an individual named Tommy Lee Shaw began a conversation with him and offered to sell some cocaine. The price and quantity of the cocaine was discussed. Detective Darr told Shaw that he needed to get some money from his friend (Detective Johnson). Shaw was seen conversing with the Appellant. As Detective Darr returned from obtaining the money from Detective Johnson, the Appellant walked away. Shaw told Detective Darr to follow him outside. Both Detectives followed Shaw outside. Shaw objected to Detective Johnson's presence, stating that the "big man" would get mad if both of them went to get the cocaine. Detective Darr gave Johnson the $40 he had previously obtained from him and Detective Johnson accompanied Shaw around the corner of the bar. A short time thereafter, Detective Johnson returned and gave the money back to Darr and stated, "[h]ere, you go do the deal."

The record further reveals that Detective Darr followed Shaw around the corner to the Appellant's pickup truck. The Appellant was standing by the driver's side of his truck. Shaw got in the passenger side of Appellant's truck, and the Appellant entered the driver's side. Shaw asked Detective Darr, "[m]an, why are you jerking my chain?" Shaw explained that a friend of the Appellant had told the Appellant that Detective Johnson's brother was a policeman. The Appellant then picked up a "slapper" and while hitting it against his hand, stated, "[m]an, I don't put up with that kind of shit." Detective Darr then suggested that the deal be called off due to the mutual distrust between the parties. Shaw then stated that Detective Darr should get in the pickup and ride around with the two of them in order to go to a safer location. Darr refused this invitation.

---

**3.** Tex.Code Crim.Pro.Ann. art. 35.16(a)(10) provides in pertinent part that a challenge for cause may be made to a particular juror if "[t]hat from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict." This provision also requires the juror to be asked, "whether, in his opinion, the conclusion so established will influence his verdict."

**4.** Tex.R.Crim.Evid. 801(e)(2)(E) provides in pertinent part:

**Statements Which Are Not Hearsay.** A statement is not hearsay if:

(2) *Admission by Party–Opponent.* The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

At trial, as Detective Darr was about to testify as to Shaw's next suggestion, the Appellant interposed his objection on the grounds of hearsay. This objection was overruled. Detective Darr then testified that Shaw indicated he and the Appellant had to go obtain the cocaine. They both left in the Appellant's truck—the Appellant was driving.

The evidence establishes that a short time later, Shaw returned to the bar and told Detective Darr that the deal should be completed in the bathroom. They went into the bathroom but there were too many people coming and going. They walked outside to the Appellant's truck. Detective Darr told the Appellant that he wasn't impressed with his slapper and that he didn't like doing business with people who acted that way. The Appellant responded that, "it was okay, that he didn't beat people anyway, that he shoots them." At trial, Detective Darr was asked by the prosecutor whether Shaw had any response to Appellant's comments. Once again, the Appellant interposed an objection, citing his assertion that the State had failed to prove a conspiracy by a preponderance of the evidence. This objection was overruled, and the court held that the statements were admissible.

Having found the statements admissible, the trial court permitted Detective Darr to testify that Shaw stated that the Appellant had a .357 Magnum that, "usually did the trick." The Appellant is said to have agreed with Shaw's statements. Shaw then handed Detective Darr a small clear plastic packet of a white powdery substance in return for $40. Shaw handed the $40 to the Appellant, who put the money in his wallet and placed his wallet in his pocket. Shaw and the Appellant then stated that if Detective Darr liked the cocaine, they could get some more. The Appellant then stated, "[j]ust don't bring the cop's brother with you next time."

■ The Appellant first contends that the court erroneously admitted Shaw statement's regarding the .357 Magnum because at the time of the admission of the statement, there was insufficient evidence of a conspiracy. Proof of a defendant's participation in and the existence of the conspiracy, however, need not be made prior to the statements of a coconspirator being admitted in evidence. The order of proof is not material. *Rodriguez v. State*, 552 S.W.2d 451, 454 (Tex.Crim.App.1977).

■ We have carefully reviewed the record before us, and find that there can be little doubt that there existed a conspiracy between the Appellant and Shaw to deliver a controlled (albeit simulated) substance. It is also apparent that the statement regarding the use of a weapon was made while the conspiracy was still effective. There is sufficient evidence of the existence of a conspiracy independent of the statements of the coconspirators, in that the actions of the parties in handing over the white powder and accepting the money serve as evidence of their acting in concert toward the commission of the crime. We find that the statement was in the furtherance of the conspiracy in that it aided the parties in creating a climate of intimidation in order to facilitate the commission of the offense and to screen the buyer. Accordingly, Point of Error No. Three is overruled.

■ In Point of Error No. Four, the Appellant contends the court erred when it allowed the State's chemist to testify that the substance delivered to Detective Darr was lidocaine. During the testimony of the State's chemist, he was allowed to testify, over objection, that the substance delivered to Darr while not cocaine, was lidocaine—a drug included in the dangerous drug act. On appeal, the Appellant maintains that the testimony was irrelevant and its prejudicial effect outweighed its probative value. The record reveals that Appellant's objection at trial fails to comport with his objection on appeal. *Carrillo v. State*, 591 S.W.2d 876, 892 (Tex.Crim.App.1979).

Notwithstanding the above, in a case involving delivery of a simulated controlled substance, one of the essential elements to be proven is the nature of the substance. *Stewart v. State*, 718 S.W.2d 286, 289 (Tex. Crim.App.1986). As such, there was no error in admitting the chemist's testimony

that the substance was lidocaine. Point of Error No. Four is overruled.

In Point of Error No. Five, the Appellant asserts that the trial court erred in failing to grant a mistrial due to improper jury argument on the part of counsel for the State. At trial, Detective Johnson testified with regard to certain conversations he had with the Appellant concerning the allegation that Johnson's brother was a policeman. The following exchange occurred:

WITNESS: Burton returned back to where I was standing and he told me that the guy he'd talked to told him that my brother was a cop. I told him, "No, my brother ain't no cop." He said, "Yeah, he is, this guy over here just said he was."

So I told him—I said, "Yeah, I guess he is, you know, it don't matter anyway." He said, "Well, I ain't dealing with you, because your brother's a cop. I got so much trouble I don't want to be dealing with you."

And I turned around and started to walk off.

STATE: And this was Burton talking?

WITNESS: Yes.

STATE: And Burton saying that 'because your brother is a cop and because I've been in trouble, I don't want to deal with you'?

WITNESS: That is correct.

STATE: Okay. And as you started to walk off, did anything else transpire?

WITNESS: Shaw then asked Burton— He said, "Well, if you won't deal with him, will—.

Appellant's counsel then asked to approach the bench and objected to the phrase "I've been in trouble" as being in contravention of a prior Motion in Limine. The Appellant did not obtain a ruling on his objection and his request for a mistrial was denied. The court instructed the prosecutor to be more careful.

At final argument during the guilt-innocence stage, the prosecutor made the following reference, "[a]nd it's the defendant that says he's been in too much trouble to deal with Detective Johnson." Appellant objected and the court instructed the jury to disregard the comment.

 Proper jury argument includes (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) response to argument from opposing counsel; and (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim. App.1990). It appears plainly from the record that the complained-of argument referred to a statement of the Appellant that was in evidence and subject to summarization. The statement was never removed from the consideration of the jury and was a valid part of the evidence to be argued. Point of Error No. Five is overruled.

Having overruled each of the Appellant's points of error, the judgment of the trial court is affirmed.