TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00304-CR







Gary Randall Davis, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 8031, HONORABLE J. ALBERT PRUETT, JR., JUDGE PRESIDING







 Appellant Gary Randall Davis was convicted in a jury trial of the offense of
delivering, by constructive transfer, less than twenty-eight grams of cocaine. Controlled
Substances Act, 71st Leg., R.S., ch. 678, sec. 1, § 481.112, 1989 Tex. Gen. Laws 2230, 2935
(Tex. Health & Safety Code Ann. § 481.112, since amended). The jury assessed punishment at
confinement for forty years and a fine of $440.00.

 Appellant presents four points of error in which he asserts that the trial court erred
in failing to submit to the jury an instruction on a lesser included offense, in allowing witnesses
to testify when their names had not been provided to the defense as required by a pretrial
discovery order, and in admitting evidence of extraneous offenses. Appellant also contends that
the jury's assessment of punishment at imprisonment for forty years constitutes cruel and unusual
punishment in violation of his federal and state constitutional rights. We will affirm the judgment.

 Although appellant does not directly challenge the sufficiency of the evidence, a
brief summary of the facts will help in the understanding of our disposition of the points of error
raised. Officers Edward Kubicek and Cristal Kaminski were assigned to undercover investigations
in Bastrop County. They became familiar with suspects who frequently were in Ray's Place, a
bar in Bastrop. Appellant was the son of the proprietor of Ray's Place and lived in a motor home
parked behind the bar with several other mobile homes.

 Officers Kubicek and Kaminski established a "cover" for their presence in the
Bastrop area. Kaminski became acquainted with Candy Gail Ebner, who was appellant's
companion and accomplice. Kaminski and Kubicek made arrangements to buy an "8-Ball" of
cocaine from appellant and Ebner. After arranging to purchase the cocaine, the officers came to
Ray's Place one evening and gave Ebner three one-hundred-dollar bills in payment. The officers
seated themselves in the bar where they could watch the bar entrances and appellant's motor
home. Ebner came from appellant's motor home into the bar and returned the three hundred
dollars to Kubicek because the "stuff" was not ready. Ebner returned to the motor home and
came back into the bar with appellant about fifteen minutes later. Kubicek gave the money back
to Ebner. Ebner, appellant, and Kaminski got into Kubicek's car, and Kubicek drove about a mile
to some apartments to pick up the narcotics.

 When they reached the apartments, a man and a woman were sitting in the yard. 
Appellant approached them and after a short conversation returned to the car and said the couple
were nervous because they did not recognize Kubicek or the car. Kubicek drove around and
parked in a different place. Appellant then had another conversation with the couple, came back
to the car and said the "stuff" was not ready yet. Kubicek and his three passengers drove around
for about fifteen minutes and then returned to the apartments. Appellant got out of the car and
was gone about five minutes when he returned to the car with a plastic sandwich bag containing
a white powdery substance. Appellant said he had purchased two "8-Balls" and told Kubicek that
when they got back to Ray's Place he would divide the cocaine and let Kubicek have the "8-Ball"
he had purchased.

 When they reached Ray's Place, Kubicek parked beside the bar. The officers
remained in the car, and appellant and Ebner entered appellant's motor home. Several minutes
later, appellant and Ebner came out of the motor home, and appellant handed Ebner two bags of
the white powdery material. Appellant remained behind a fence. Ebner came to the car and
offered Kaminski her choice of the bags. Kaminski selected one of the bags, and Ebner and
appellant disappeared behind the bar.

 The officers contacted Sergeant David Campos, Chief Investigator for the Bastrop
County Sheriff's office. The three met about three and one-half miles from Bastrop, where
Kubicek gave Campos the bag Ebner gave him. Campos took the bag containing the powder to
the Department of Public Safety Laboratory. Joel Budge, the supervisor of the drug section of
the laboratory, testified and confirmed that he had determined the powdery substance in the bag
was cocaine. Budge testified that the bag contained 2.93 grams of cocaine, which he believed,
based on his experience, would make twenty-nine or thirty hits--usable quantities.

 Appellant did not testify but called officer Kubicek as a witness and questioned him
about the absence of some matters in his report about which he had testified. In this effort to
impeach Kubicek, appellant offered and the court admitted as an exhibit the complete offense
report.

 In his first point of error, appellant complains of the trial court's refusal to submit
to the jury an instruction on the lesser included offense of possession of cocaine. Possession of
cocaine is a lesser included offense of delivery of cocaine. Jones v. State, 586 S.W.2d 542, 545
(Tex. Crim. App. 1979); Mello v. State, 806 S.W.2d 875, 878 (Tex. App.--Eastland 1991, pet.
ref'd). A jury instruction on a lesser included offense should be submitted to the jury when the
lesser included offense is included within the proof necessary to establish the offense charged and
when there is evidence in the record from which a rational jury could find that the defendant, if
guilty, is guilty only of the lesser included offense. Rousseau v. State, 855 S.W.2d 666, 673
(Tex. Crim. App. 1993); Adanandos v. State, 866 S.W.2d 210 (Tex. Crim. App. 1993); Burnett
v. State, 865 S.W.2d 223, 227 (Tex. App.--San Antonio 1993, pet. ref'd). The credibility of the
evidence and whether it conflicts with other evidence must not be considered in determining
whether an instruction on the lesser offense should be given. Ross v. State, 861 S.W.2d 870, 875
(Tex. Crim. App. 1992); Lugo v. State, 667 S.W.2d 144, 146-47 (Tex. Crim. App. 1984).

 Appellant had actual physical possession of the cocaine before it was delivered, and
he had the control and management of the cocaine until it was delivered into the possession of the
officers. However, there is no evidence to show that a delivery of the cocaine was not made. To
the contrary, all of the evidence without conflict shows the cocaine was delivered to the officers. 
No rational jury, in this case, could find that the cocaine was not delivered and that appellant was
not an active participant in that offense. Therefore, a rational jury could not find that appellant,
if guilty, was guilty only of the lesser included offense of possession of cocaine. A defendant is
not entitled to a lesser included offense instruction merely because in proving the greater offense
the State also proves the lesser offense. Gibbs v. State, 819 S.W.2d 821, 832 (Tex. Crim. App.
1991). The trial court did not err in refusing to instruct the jury on the lesser included offense. 
Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the trial court erred in allowing
witnesses to testify when their names had not been provided to defense counsel in accord with the
trial court's pretrial discovery order. The State was required by that order to furnish defense
counsel with the names of the witnesses by 10:00 a.m. on the Friday before the commencement
of trial. The State did not furnish defense counsel with the names of the witnesses Campos and
Salmela until Monday morning before trial. Sergeant David Campos's testimony merely
established the chain of custody for the cocaine offered in evidence. Campos received the cocaine
from officer Kubicek and took it to the Department of Public Safety Laboratory. Ed Salmela, an
investigator employed by the Bastrop Police Department, testified at the punishment phase of the
trial that appellant's reputation in the community for being a peaceful and law abiding citizen was
bad. Two other witnesses also testified to the same effect.

 Appellant did not challenge the prosecutor's assertion that prior to trial defense
counsel was allowed to see and inspect the State's file in this case. Campos's name was listed in
that file as a witness who received the cocaine from officer Kubicek and delivered it to the
laboratory for analysis. Campos did not testify until the second day of the trial. Salmela did not
testify until the third day of the trial. Appellant did not ask for a continuance or a postponement
of the trial so he could interview and investigate these witnesses. A request for a continuance is
generally necessary to show error. Stoker v. State, 788 S.W.2d 1, 15-16 (Tex. Crim. App.
1989); Duff-Smith v. State, 685 S.W.2d 26, 33 (Tex. Crim. App. 1985); Pinkerton v. State, 660
S.W.2d 58, 64 (Tex. Crim. App. 1983); Quinones v. State, 592 S.W.2d 933 (Tex. Crim. App.
1980). We hold that appellant has failed to demonstrate that the State's failure to list the names
of the witnesses on the witness list Friday instead of Monday before trial constitutes error. The
trial court did not abuse its discretion in allowing Campos and Salmela to testify. Appellant's
second point of error is overruled.

 In appellant's third point of error, he claims, "The trial court erred in admitting
testimony regarding extraneous offenses." Multifarious complaints are presented in this point of
error. Such a point of error generally presents nothing for review. Adkins v. State, 764 S.W.2d
782, 785 (Tex. Crim. App. 1988); Martinets v. State, 884 S.W.2d 185 (Tex. App.--Austin 1994,
no pet.). However, we will discuss appellant's grievance. In this point of error, complaints are
made to the admission of evidence when no trial objection was made, when the trial objection
differs from the objection on appeal, and when trial objections were made but the same evidence
came in at another time without objection. Moreover, appellant, for the purpose of impeaching
officer Kubicek on one matter, offered and the trial court admitted the complete offense report,
which chronicled the investigation of the offense in greater detail than the evidence offered by the
State.

 Appellant also incorporates argument that his motions in limine and orders thereon
were violated. Pretrial motions in limine do not generally preserve for review objections to the
admission of evidence. There must be proper and timely objections made during trial when the
evidence is offered. Gonzales v. State, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985); Brazzell v.
State, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972); Abbott v. State, 726 S.W.2d 644, 648 (Tex.
App.--Amarillo 1987, pet. ref'd); Watson v. State, 715 S.W.2d 864, 867 (Tex. App.--Fort Worth
1987), rev'd. on other grounds, 762 S.W.2d 591 (Tex. Crim. App. 1988).

 Appellant designates three specific instances for consideration. We quote from the
record.

 The first instance:



Q. [By prosecutor]  What took place on that date, your first contact with Gary
Davis?


A. That's when the first purchase of cocaine was made.


Q. Can you tell us when you first met Gary Davis did you --


 [By Defense Counsel]  Your Honor, I object to relevance. This is all on May
7th. It has nothing to do with the date that --


 [By the Court]  Sustained. Move on, please.


 

 The second instance:



Q. [By Prosecutor]  All of the cases that you made on Candy Ebner, did they
involve--also involve Ray Davis?


 [By Defense Counsel]  Objection, Your Honor, it's irrelevant. Candy Ebner
is not on trial here today.


 [By the Court]  I'll overrule that.


 [By the Prosecutor]  I'm sorry; I didn't hear what you said, Your Honor.


 [By the Court]  The objection was overruled.


Q. [By Mr. Penick]  Would you answer the question?


A. Yes, sir, it did directly involve Gary Davis.


Q. All right, how many cases would you say were made?


A. Involving Candy Ebner and Gary Davis--four.


Q. Did you ever see Gary Davis use drugs or appear to use drugs?


A. I never saw him actually use the narcotic. I did see him appear to be
intoxicated on several occasions.



 The third instance, which occurred at the punishment phase of trial.



Q. What I would like you to do is to talk a little bit about your duties as
investigator about--you mentioned people under you, like the people you have
cause to come in contact with in terms of--that might be supplying you
information and things like that?


A. Oh, it's a variety of individuals. A lot of them are other police officers with
other agencies, intelligence derived from traffic stops by patrol officers, and
certainly any cases that are made, I'm the person that interviews the suspects
in the jail and I try to develop what I like to refer to as spring-off cases. 
Oftentimes, you'll have someone that is arrested for a narcotics case, and there
is usually one or more individuals that can or will be associated with that
initial case, and it's part of my responsibility to try to identify those
individuals.


Q. You said as liaison officer--that means a go-between officer obviously. Do you
talk about cases? Do you talk about individuals with the DEA, with the DPS,
with the capital area narcotics task force? Do you talk about --


A. Yes, I do. Once a month they have a board of governors meeting, and I'm the
representative that attends those meetings.


Q. Do you talk about specific names of individuals, suspects and ongoing
problems?


 [By Defense Counsel]  Your Honor, I'm going to object to this line of
questioning as to relevance. This is all stuff that happens now, and we're here
on a case that happened last May.


 [By Prosecutor]  I will establish the relevance, Your Honor, because we're
about to get into reputation testimony.


 [By the Court]  I'll overrule the objection for now.


Q. [By Prosecutor]  Do you talk with other investigators--in other words, opposite
numbers of other federal and state drug agencies, do you not?


A. Yes, I do.


Q. As well as police forces?


A. Exactly.


Q. And then as you said crooks, criminals, other people out in the community?


A. Certainly.


Q. What I'd like to do then is now move and ask you some specific questions. 
We have had a discussion with regard to your testimony outside, have we not?



The prosecutor then elicited the testimony of the officer concerning appellant's reputation.

 Appellant argues that in these three instances evidence of extraneous offenses was
admitted, thus violating the Rules of Criminal Evidence. Tex. R. Crim. Evid. 404(b). However,
at the time of trial, there were no objections on these grounds. If the complaint on appeal does
not comport with the trial-court objection, nothing is presented for review. McFarland v. State,
845 S.W.2d 824, 836-37 (Tex. Crim. App. 1992); Rezac v. State, 782 S.W.2d 869, 870-71 (Tex.
Crim. App. 1990); Navarro v. State, 863 S.W.2d 191, 200 (Tex. App.--Austin 1993, pet. ref'd);
Adams v. State, 862 S.W.2d 139, 147 (Tex. App.--San Antonio 1993, pet. ref'd).

 In the first instance, the trial court sustained appellant's objection, even though it
may not have been precisely correct, and since no further relief was sought, nothing is presented
for review. In the other two instances, the second instance at the guilt-innocence phase of trial
and the third instance at the punishment phase of trial, the trial objection of "irrelevant" and
"relevancy" are not the same as "extraneous offense" and "Rule 404(b) error" urged on appeal. 
Appellant's third point of error is overruled.

 In his final point of error, appellant argues that his punishment for the offense of
which he was convicted is cruel and unusual and therefore violates both his federal and state
constitutional rights. U.S. Const. amend. VIII; Tex. Const. art. 1, § 13. For the delivery of 2.93
grams of cocaine, the jury assessed appellant's punishment at imprisonment for forty years. He
committed the offense in May 1993. The same offense if committed after September 1, 1994
would have a maximum penalty of imprisonment for twenty years. The act which became
effective September 1, 1994 has no ameliorating provisions for offenses committed before its
effective date. The statute in effect at the time appellant committed the offense provided a penalty
range of imprisonment for not more than ninety-nine years and not less than five years. 
Controlled Substances Act, 71st Leg., R.S., ch. 678, sec. 1, § 481.112, 1989 Tex. Gen. Laws
2230, 2935 (Tex. Health & Safety Code Ann. § 481.112, since amended); Tex. Penal Code Ann.
§ 12.32 (West 1994). (1) Appellant has cited no case law in support of his argument in this point
of error. Courts in this State have apparently without exception held that punishment assessed by
a judge or jury which is within the limits prescribed by statute is not cruel and unusual within the
constitutional prohibitions. McNew v. State, 608 S.W.2d 166, 174 (Tex. Crim. App. 1980);
Benjamin v. State, 874 S.W.2d 132, 134-35 (Tex. App.--Houston [14th Dist.] 1994, no pet.);
Johnson v. State, 864 S.W.2d 708, 724-25 (Tex. App.--Dallas 1993, pet. granted on other
grounds); Burton v. State, 830 S.W.2d 197,199 (Tex. App.--El Paso 1992, no pet.); Swinney v.
State, 828 S.W.2d 254, 258-59 (Tex. App.--Houston [1st Dist.] 1992, no pet.).

 Some people might consider the jury's verdict harsh; however, the jury in this case
was properly instructed on the law and entrusted with the duty and responsibility to assess the
proper penalty within the range provided by the statutes and as dictated by the evidence. The
severity of the punishment may in part be explained by the testimony of three witnesses that
appellant's reputation in the community for being a peaceful law abiding citizen was bad. 
Moreover, the jury could legitimately infer from the evidence that appellant was in the business
of unlawfully selling drugs. Appellant's fourth point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices B. A. Smith and Dally*

Affirmed

Filed: April 26, 1995

Do Not Publish



* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   This offense took place before September 1, 1994, and is governed by the law in effect
at the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993
Tex. Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994, have
no substantive effect on this offense, the current code is cited for the sake of convenience.