

# NUMBER 13-14-00567-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JASON TERRENCE LEITA,                                              Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

**On appeal from the 377th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Longoria
Memorandum Opinion by Justice Rodriguez**

A jury found appellant Jason Terrence Leita guilty of ten counts of promotion of child pornography, second-degree felony offenses. *See* TEX. PENAL CODE ANN. § 43.26(e) & (g) (West, Westlaw through 2015 R.S.). The trial court sentenced Leita to twenty years' confinement in the Institutional Division of the Texas Department of Criminal

Justice, with the sentences to be served concurrently, and assessed a $10,000 fine for each count. The jury also found Leita guilty of four counts of possession of child pornography, and the trial court sentenced Leita to ten years on each count, with the sentences to run after the sentences on the promotion-of-child-pornography counts were served.[1] *See id.* § 43.26(a) & (d) (West, Westlaw through 2015 R.S.). By five issues, Leita contends: (1) the evidence was insufficient to support a finding that he knew he was sharing the files on his computer; (2) he suffered egregious harm because the jury charge failed to provide an instruction on voluntary conduct; (3) his convictions violated the constitutional protection against double jeopardy because they all arose from the same act; (4) the trial court abused its discretion when it admitted extraneous pornographic images over Leita's rule 403 and 404 objections; and (5) counsel provided ineffective assistance. We affirm.

## I.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Leita contends that the State failed to offer sufficient proof of the knowledge element of section 43.26(e). *See id.* § 43.26(e). He complains that the evidence was insufficient to support a finding that he knew he was sharing the files on his computer. Leita argues that the State's only relevant evidence that he promoted child pornography was proof that he downloaded child pornography using Shareaza, a peer-to-peer sharing software with a default protocol that was set to share files. Leita asserts that his passive use of Shareaza to download child pornography would constitute

---

[1] Leita concedes that the State proved beyond any doubt that he intentionally and knowingly downloaded child pornography, and he does not challenge his convictions for possession of child pornography. We address these convictions only in the context of Leita's double jeopardy issue.

2

promotion of child pornography only if coupled with his knowledge that the files were being shared. Leita claims that the State did not establish this knowledge beyond a reasonable doubt.

In response, the State points to evidence that Leita was operating a file-sharing program that was configured to share files, evidence regarding Leita's technology skills, his possession of certain passwords, and the amount of images and videos found on equipment at his residence. The State contends that this evidence, taken together, was enough "for a rational jury to be convinced beyond a reasonable doubt of [Leita's] guilt." We agree with the State.

## A. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, a court will examine the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2011); *see also Gillette v. State*, 444 S.W.3d 713, 720 (Tex. App.—Corpus Christi 2014, no pet.). The critical inquiry is whether the evidence would support a rational fact finder determining that the defendant is guilty beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The fact finder may make reasonable inferences from the evidence. *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009). We must determine whether the necessary inferences made by the trier of fact are reasonable based on the "cumulative force of all the evidence." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames v. State*, 353

3

S.W.3d 854, 860 (Tex. Crim. App. 2011).

The reviewing court measures the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). A hypothetically correct jury charge is authorized by the indictment, accurately sets out the law, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense in question. *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (en banc). Under such a charge, a conviction for promotion of child pornography must be supported by evidence showing that Leita (1) knowingly or intentionally promoted or possessed with intent to promote materials that visually depicted a child, younger than eighteen years of age at the time the image of the child was made, who was engaging in sexual conduct, and (2) knew the material depicted a child younger than eighteen engaging in sexual conduct. *See* TEX. PENAL CODE ANN. § 43.26(e). For our review in this case, a person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b) (West, Westlaw through 2015 R.S.).

The State does not have to provide direct evidence to prove the defendant's guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Kuciemba v. State,* 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13; *see Wise*,

4

364 S.W.3d at 903; *see also, e.g., Wenger v. State*, 292 S.W.3d 191, 198–99 (Tex. App.—Fort Worth 2009, no pet.) (holding that making child pornography available for others to access and download through peer-to-peer file-sharing software qualifies as "dissemination" or "distribution" of the pornography). Knowledge is a fact question and is usually proven through the circumstances surrounding the crime. *Carrizales v. State*, 397 S.W.3d 251, 255 (Tex. App.—Corpus Christi 2013), aff'd on other grounds, 414 S.W.3d 737 (Tex. Crim. App. 2013); *see Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984) (en banc). And

> [f]or the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict.

*Wise*, 364 S.W.3d at 903 (citations omitted).

## B. Testimony

It is undisputed that Leita downloaded child pornography through the use of Shareaza, a peer-to-peer sharing program, and that the copy of Shareaza on Leita's computer was configured to allow peers to download files from his computer. State witness Daniel Simons, a cybercrime investigator formerly with the Victoria County Sheriff's Office, testified that he participated in an investigation concerning suspected child pornography being downloaded at Leita's residence. According to Investigator Simons, he "directed the actions of the investigators, as well as the processing of the computer."

At trial, Investigator Simons explained how peer-to-peer networks share files. He

5

described Shareaza as one of those networks, explaining how Shareaza works and confirming that Shareaza is a file-sharing tool known by law enforcement to be used for trading child pornography. Investigator Simons also explained that within the community of individuals interested in child pornography, it was common practice for those individuals to trade child-pornography material with one another.

Investigator Simons testified that he executed a search warrant at Leita's residence and found evidence that Leita's computer was turned on and that Shareaza was downloading a selected file at that time. He agreed that "active sharing [was] going on." Investigator Simons also described hand-written notes located inside a cabinet at Leita's residence. He discussed how those notes related to listings of child-pornography websites and a listing of encrypted files and passwords necessary to access them. For example, Investigator Simons testified that the notes contained references to "series" or "collections," which, according to Investigator Simons, are groups of images—pictures or videos—that have similar subjects. He agreed that individuals will trade information about these series. Investigator Simons further agreed that, after reviewing reports that analyzed the files on Leita's computer, he saw evidence of promotion of child pornography because "[b]y default, [S]hareaza makes itself available to other users. All the files you download are then shared back through the [S]hareaza network. Because [Leita] was using [S]hareaza and because the files were kept in the download folder, that indicated, to me, promotion."

Investigator Simons also described finding a bag of women's panties under Leita's bed and a towel under the table where Leita's computer was located. The trial court

admitted these items into evidence, without objection.

Finally, the State asked Investigator Simons, "Did you feel that you were dealing with a person—Jason Leita, with a certain level of intelligence?" And he responded, "Yes . . . . We saw things of higher intelligence—the communications, the equipment he had, the use of the external hard drive connected to the Blu-ray, to watch movies in his bedroom, camping equipment, ownership of a boat and ski-doo. That all indicated to us somebody that understands how things work." On cross-examination when asked if he was aware of "some mental problems, insufficiencies [Leita] might have," Investigator Simons responded,

> He did indicate to us—or tried to indicate to us he may have mental deficiencies. . . . We did not have him evaluated, but we did look into it; however, we saw several things—or indicators, to us, that he was aware of the difference between right and wrong, he was aware of his actions and he had a grasp of technology.[2]

The State also called Detective Cody Breunig from the Cyber Crimes Unit of the Victoria Police Department as a witness. He testified similarly to Investigator Simons regarding his involvement in the execution of the search warrant at Leita's residence and the details of the investigation. He, too, characterized the layout of the electronic equipment at Leita's residence as that used by someone who "has a general understanding of electronics." In addition, Detective Breunig explained that the equipment appeared to have been constructed at the residence. He found no evidence

---

[2] Leita's mother, Linda Jonckers, testified for the defense. She explained that her son "was hyper-active and [had anxiety, depression, and] learning problems[—dyslexia] in school," "always in special education," and "couldn't comprehend things." She testified as to Leita's work history: he worked doing "repetitive things" at Albertson's, KFC, and Berry Plastics. According to Jonckers, Leita purchased his home with money inherited when his father died.

7

that Leita's computer had been hacked.[3]

According to Detective Breunig, he found the following "files of interest" on Leita's computer's hard drive: (1) one image of cartoon child pornography; (2) fourteen child erotica videos; (3) 210 videos of child pornography; (4) eighty-seven images of child pornography; and (5) seventeen suspected child-pornography videos. Detective Breunig also located seven clear and three suspected child-pornography videos on an external hard drive recovered at Leita's residence. Detective Breunig confirmed that handwritten notes regarding series or collections of images and passwords associated with them were found at Leita's home. He agreed that people who are interested in child pornography sometimes trade passwords and links with other people interested in child pornography. Because Leita had such notes, Detective Breunig agreed that he believed Leita was trading child pornography.

Michael Henry, formerly of the Victoria County Sheriff's Office, also testified for the State. Officer Henry explained that he participated in the execution of the search warrant in this case. He provided testimony consistent with that of Investigator Simons and Detective Breunig. Officer Henry agreed that Leita kept the majority of the child-

---

[3] Leita's counsel presented the defensive theory that someone other than Leita could have accessed, downloaded, and promoted child pornography from Leita's computer: i.e., that another person "hacked" into Leita's computer. Jonckers testified that there have been "several times somebody has been in his home." She explained that the locks on the door were not working and that she had noticed screens missing, doors ajar, the bedroom window unlatched, the gate broken, and things disturbed inside after their absence from the house. She also identified a number of people who had access to the house.

In addition, Jonckers testified that she had not noticed Leita writing letters or writing down codes or passwords because she did not think he could write: she had "never seen him do that." On cross-examination, when questioned about Leita having a driver's license and being able to read to do so, she explained that she "didn't say he doesn't know how [to read]. He has a difficult time and does not comprehend very well."

pornography computer files in his downloaded file section and, by doing so, would make those files available to other Shareaza users.

The State also called Daniel Boots, a cybercrime investigator with the Victoria County Sheriff's Office. Investigator Boots confirmed previous testimony offered by the State's witnesses. He, too, agreed that Leita was "technologically savvy" because of the amount of radio equipment at his residence, the setup of his living room television and PlayStation and his master bedroom television and Blu-ray, and a book on hacking found at his residence. Specific to the promotion offense, the following exchange occurred between the State and Investigator Boots:

Q    Do individuals interested in pornography trade passwords?

A    Yes.

Q    And what do they trade for?

A    File folders, like—On your computer, you have the different folders
     you can put files in.   They will trade for files of interest.

Q    Would that be child pornography?

A    Yes.

Q    Did you believe, based upon what you saw, that [Leita] had the intent
     to share his child pornography with others?

A    Yes.

Q    Why is that?

A    Downloading so much that's, typically, used in sharing and trading.

Q    And, if he has passwords and series names written down, would that
     tend to corroborate your belief?

A    Yes.

9

Q      Why is that?

A      If he's putting passwords to files and folders, it's likely he's going to give them to someone else to open up and use.

Q      Or is it possible he's giving it out, in exchange for passwords and names?

A      That, also.

## C.      Discussion

Leita acknowledges that circumstantial evidence alone can be sufficient to establish guilt, *see Hooper*, 214 S.W.3d at 13, so the State had the option to prove knowledge beyond a reasonable doubt through circumstantial evidence.  We conclude the State did just that.

It is undisputed that Leita used Shareaza, a peer-to-peer file-sharing network, and that Leita's Shareaza system was configured to allow file sharing.  In addition, the evidence established that Shareaza is used by people interested in child pornography and that sharing and trading child pornography is a common practice among people interested in that material.  There was also testimony that Leita possessed a very large amount of child pornography, which, according to the testimony, is consistent with someone who is sharing and trading the material.  Leita also kept much of his child-pornography material in file folders, specifically a download folder, which suggests, according to the testimony at trial, that others could readily download the material. Testimony further established that Leita possessed a written list of passwords to suspected encrypted child-pornography files.  Witnesses described how sharing passwords of encrypted files is a common practice among people sharing and trading

child pornography. In addition, multiple State witnesses described Leita as "technologically savvy."

Assuming without deciding that evidence of the use of Shareaza and its default protocol alone is not sufficient to establish that Leita knew he was sharing or intended to share or promote child pornography, we conclude that the State presented sufficient circumstantial evidence to establish the challenged knowledge element of this offense. The circumstantial evidence supports the reasonable inference that Leita knowingly shared the significant amount of child pornography he downloaded from Shareaza with others. A rational fact finder could have been convinced by the circumstantial evidence that, for example, Leita knew his Shareaza program was set to share or that he knew that sharing files was a central function of Shareaza's service. Leita attempts to minimize the importance of the evidence concerning his possession of passwords for child-pornography material on his computer and the testimony that he was "technologically savvy." But the weight to be given to the evidence and the credibility to be given the witnesses are the exclusive provinces of the fact finder. *See Wise*, 364 S.W.3d at 903. It is apparent that the jury found the evidence concerning Leita possessing passwords to encrypted child pornography to be meaningful and the evidence of Leita's technological competence to be persuasive; it then made the inference from that evidence to determine that Leita knew he promoted child pornography.

In sum, we conclude that the inferences necessary to establish guilt in this case are reasonable based on the cumulative force of all the evidence considered in the light most favorable to the verdict. *See Wise*, 364 S.W.3d at 903; *see also Jackson*, 443 U.S.

11

at 318–19.   The evidence is sufficient for a rational fact finder to be convinced beyond a reasonable doubt that Leita was aware that the circumstances existed or that his conduct was reasonably certain to result in the promotion of the child pornography that was on his computer.   *See* TEX. PENAL CODE ANN. § 43.26(e); *see also id.* § 6.03(b).   We overrule Leita's first issue.

## II.   CHARGE ERROR

By his second issue, Leita contends that he suffered egregious harm because the jury charge failed to provide a defensive instruction on voluntary conduct.   *See id.* § 6.01(a) (West, Westlaw through 2015 R.S.) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.").   Leita claims that he would have been entitled to this instruction based on the evidence and testimony presented at trial—specifically, the evidence that Shareaza, a third party, and not Leita, "unilaterally offered his files to the Shareaza public for download by default."[4] Yet a defendant cannot complain on appeal about the trial judge's failure to include a

---

[4] Leita claims that had the jury been properly charged, the questions it would have considered when reaching its verdict would have necessarily included the following:

> (1)   Can a person be convicted for possession of child pornography with the intent to promote by recklessly or negligently leaving the Shareaza settings on "default"?

> (2)   Can a person be convicted for possession of child pornography with the intent to promote by intentionally or knowingly leaving the Shareaza settings on "default"?

> (3)   Is leaving the Shareaza settings on "default" a voluntary act?

> (4)   Did the State prove that Jason Leita intentionally or knowingly left his Shareaza settings on default? [and]

> (5)   Does the State have to prove that Jason Leita did some voluntary act *separate from merely downloading Shareaza* that would prove criminal intent for possession with the intent to promote child pornography?

12

defensive instruction that he did not preserve by request or objection. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc)); *see also Baum v. State*, No. 05-12-01456-CR, 2014 WL 1018308, at *3–4 (Tex. App.—Dallas 2014, pet. ref'd) (mem. op., not designated for publication). And the record in this case does not include a request by Leita that a voluntariness defense be included in the charge, and defense counsel did not object to the jury charge. As such, Leita has not preserved this complaint for our review. *See Vega,* 394 S.W.3d at 519 (citing *Posey*, 966 S.W.2d at 61); *see also* TEX. R. APP. P. 33.1. We overrule this second issue.

### III.   DOUBLE JEOPARDY

In his third issue, Leita contends that his fourteen convictions violate the constitutional protection against double jeopardy. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 14. Leita complains that he was wrongfully convicted on fourteen counts for one single act—the act of being in possession of child pornography with intent to promote it "on or about the 1st day of August, 2012" when the Victoria Police Department executed a search warrant on his house. However, a double jeopardy claim is forfeited if it is raised for the first time on appeal unless the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interest. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (en banc).

In this case, Leita did not file pre-trial objections to the form of the indictment before his trial began. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West, Westlaw through

13

2015 R.S.). He did not object to his convictions on this basis after they were announced, after his sentence was imposed, or in his motion for new trial. *See* TEX. R. APP. P. 33.1. Because Leita failed to make a timely request, objection, or motion in the trial court on the issue of double jeopardy, he forfeited his double jeopardy claim unless such a violation is clearly apparent on the face of the record. *See Gonzalez*, 8 S.W.3d at 643.

For our review of whether a double jeopardy violation appears on the face to the record, we are guided by *Vineyard v. State*. *See* 958 S.W.2d 834, 838 (Tex. Crim. App. 1998) (en banc); *see also O'Connor v. State*, No. 08-03-00322-CR, 2004 WL 1576742, at *8–9 (Tex. App.—El Paso 2004, no pet.) (not designated for publication). In *Vineyard*, the defendant was convicted "of possession of child pornography for possessing a videotape containing a film image visually depicting a child engaging in sexual conduct." *Id.* at 835 (emphasis and internal quotations omitted). He "was later convicted in a successive prosecution of possession of child pornography for possessing a photograph with a film image visually depicting a child engaging in sexual conduct." *Id.* (emphasis and internal quotations omitted). "Both prosecutions arose out of the same transaction." *Id.* at 836. The controlling issue before the court of criminal appeals was whether the defendant's simultaneous possession of the videotape and the photograph constituted more than one offense. *Id.* at 837. And the Vineyard Court held that "the Legislature intended in cases like [*Vineyard*] to make possession of each item of child pornography an 'allowable unit of prosecution.'" *Id.* at 838.

In this present case, Leita was convicted on fourteen counts of possession or promotion of child pornography. Each conviction was based on a separate and different

14

image of child pornography. The images—some videotapes and some digital photographs—were not identical. Under *Vineyard*, although Leita was indicted for the simultaneous possession or promotion of each of the fourteen items of child pornography, each different image was an allowable unit of prosecution.

Therefore, no double jeopardy violation is clearly apparent on the face of this record. *See Gonzalez*, 8 S.W.3d at 643. The fact that Leita was convicted for possessing or promoting those images simultaneously does not bar prosecution for each and every single item or unit of child pornography. *See id.* Leita forfeited his double jeopardy claim. *See id.* We overrule Leita's third issue.

## IV. ADMISSION OF EVIDENCE

By his fourth issue, Leita contends that the trial court abused its discretion when it admitted "hundreds of extraneous pornographic images" over his rule 403 and 404(b) objections. *See* TEX. R. EVID. 403, 404(b). He claims that he was unduly prejudiced because of the inherently inflammatory nature of the evidence. We disagree.

## A. Standard of Review and Applicable Law

We review the trial court's decision regarding the admissibility of evidence for an abuse of discretion. *Pawlak v.* State, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). Under this standard, we uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* The trial court has wide latitude to admit or exclude evidence of extraneous offenses. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g en banc).

While inadmissible to prove a person's character to show he acted in accordance

15

with that character on a particular occasion, evidence of extraneous offenses being offered under Texas Rule of Evidence 404(b) can be admissible to prove motive, opportunity, preparation, plan, knowledge, intent, or absence of mistake. *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997) (en banc); *see* TEX. R. EVID. 404(b). And extraneous-offense evidence is relevant whenever it has a tendency to make the existence of any fact of consequence to the determination of the case more or less probable than it would be without the evidence. *See* TEX. R. EVID 401; *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

But a trial court may exclude relevant evidence under rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). "Unfair prejudice" refers to more than the fact that the evidence has an adverse or detrimental effect on the defendant's case. *Id.* It is "an undue tendency to suggest a decision on an improper basis, commonly an emotional one." *Id.* Moreover, the Texas Court of Criminal Appeals has recognized that "sexually related bad acts and misconduct involving children are inherently inflammatory." *Pawlak*, 420 S.W.3d at 811. "[E]vidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way." *Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002) (en banc); *see Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983) (en banc) ("The general

16

rule is that an accused may not be tried for some collateral crime or for being a criminal generally."). In conducting a rule 403 analysis, we consider the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). "The term 'probative value' refers to the inherent probative force of an item of evidence— that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Casey*, 215 S.W.3d at 879 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)). The presumption is that relevant evidence will be more probative than prejudicial. *See Montgomery*, 810 S.W.2d at 389.

## B. Discussion

### 1. The Evidence

The State offered a notebook as Exhibit 66.[5] It contained, in part, a pictorial summary of fifty extrinsic child videos[6] and eighty-seven extrinsic images, all identified as child pornography and all found on an electronic device in Leita's home. The trial court overruled Leita's objection to these materials and admitted the notebook.[7]

---

[5] The State originally sought to introduce State's Exhibit 59, the external hard drive found at Leita's residence. Leita objected. Without ruling on his objections, the trial court held a hearing outside the presence of the jury. While the State did not re-offer Exhibit 59, it did offer State's Exhibit 66, described by Leita as a "summary of the contents of State's Exhibit 59."

[6] Each pictorial summary identified the video's file name and contained three screen shots from the video.

[7] In addition, Exhibit 66 contained copies of the fourteen images and pictorial summaries of the three videos, for which Leita was charged. Leita raised no objection to the admission of these images and summaries. The trial court also admitted, without objection, State's Exhibit 96, a DVD containing the fourteen charging images and the three charging videos.

17

**2.      Probative Value**

We first examine the probative force of the evidence in question and the State's need for the evidence.   *See Casey*, 215 S.W.3d at 879; *see also* TEX. R. EVID. 403, 404. As acknowledged by Leita, the State had no direct evidence of Leita promoting child pornography.   So the State had to prove the knowledge element entirely through circumstantial evidence.   Because there was no direct evidence, the State's need for this evidence was strong.   *See Erazo*, 144 S.W.3d at 489.   To that end, there was specific witness testimony that possession of a large amount of child pornography was indicative of someone who was involved in the sharing and trading of child pornography.   The extrinsic evidence set out in the notebook showed that Leita possessed a large amount of child pornography.   It made more probable Leita's knowledge that the files on his computer were being shared, which is a fact of consequence.   *See Casey*, 215 S.W.3d at 879; *see also* TEX. R. EVID. 401 (defining relevant evidence as evidence that has any tendency to make a fact of consequence "more or less probable than it would be without the evidence").   Because evidence that Leita possessed a large amount of additional child pornography was relevant and the State's need for the item of evidence was strong, we conclude that it had probative force or value for proving Leita had the requisite knowledge—an element needed to establish promotion of the child pornography.   *See Casey*, 215 S.W.3d at 879; *Santellan*, 939 S.W.2d at 168; *see also* TEX. R. EVID. 404(b). Having concluded that the challenged evidence has probative value, we must examine whether there was any unfair prejudice.   *See* TEX. R. EVID. 403.

18

### 3.   Unfair Prejudice

Leita claims that because evidence of sexually-related bad acts and misconduct involving children are inherently inflammatory, "the trial court's allowance of the 150-plus extraneous pornographic files forced the jurors to convict [him] on being a criminal or deviant generally, rather than for the 14 charges on which he was indicted."   Leita argues that overruling his objection to the admission of State Exhibit 66 was an abuse of discretion under *Pawlak*.   420 S.W.3d at 810–11.

In *Pawlak*, 9,900 male pornographic images, including homosexual child pornography, contained on computer disks taken from Pawlak's home were introduced into evidence.   *Id.* at 811.   The court of criminal appeals found that "the trial court abused its discretion when it admitted all 9,900 images of pornography without regard to the amount of evidence, kind of evidence, or its source, and over [Pawlak's] [r]ule 403 objection."   *Id.*   In terms of numbers alone, the evidence challenged in the present case consists only of fifty extrinsic child videos and eighty-seven extrinsic images.   The facts in this case are, thus, readily distinguishable from the facts in *Pawlak*.

In addition, the probative value of the extrinsic evidence in this case is much greater than in *Pawlak*.   The State charged Pawlak with sexual assault offenses, not possession and promotion of child pornography.   *Id.* at 808.   In *Pawlak*, because of the offenses charged, the court of criminal appeals concluded that the extraneous-offense evidence "did not show that an assault or attempted assault was more likely to have occurred," that "possession of pornography was not an issue" in the trial, and that the extrinsic evidence that was offered was only marginally probative to dispute the

defendant's defensive theory that he was not interested in men. *Id.* at 810–11. In *Pawlak,* the 9,900 digital images of inherently inflammatory extrinsic evidence had almost no probative value for the actual case. *See id.* In contrast, the extrinsic evidence of Leita possessing a large amount of additional child pornography had probative force for proving Leita had the requisite knowledge to establish promotion of child pornography. That the extrinsic evidence in this case had greater probative value than in *Pawlak* is another distinguishing factor.

The State also notes that "[t]he trial judge was fully cognizant of the danger of unfair prejudice by allowing an excessive number of images, and it was due to those concerns that the State withdrew 160 screen shots." We agree that the trial court took a reasoned, balanced approach, admitting relevant evidence of child pornography similar to the charged offenses and from equipment found at Leita's residence, while recognizing that there must be a limit on the amount of evidence so that it would not improperly influence the jury. *Cf. id.* at 811.

Accordingly, we conclude that the trial court's determination that the probative value of the extrinsic evidence was not substantially outweighed by its danger of unfair prejudice was within the zone of reasonable disagreement. *See id.* at 810. While evidence of sexual misconduct toward children is always inherently inflammatory, *see id.*, we cannot conclude that the challenged extrinsic evidence had an adverse effect on the case such that the jury's decision may have been made on the basis that Leita was a criminal or deviant generally, as he argues.

20

## C.    Summary

We conclude that the trial court did not abuse its discretion when it admitted State's Exhibit 66.    *See id.*; *see also* TEX. R. EVID. 403, 404(b).    We overrule Leita's fourth issue.

## V.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his fifth issue, Leita claims that "[t]rial counsel's performance was so unreasonably unstrategic that the jury had no choice but to convict [him] for promotion of child pornography."[8]    Leita asserts that he was constructively denied counsel, such that we must presume prejudice.    *See United States v. Cronic*, 466 U.S. 648, 658–59 (1984); *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Cannon v.* State, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) (op. on reh'g).

## A.    Standard of Review and Applicable Law

To prove ineffective assistance of counsel, the Texas courts apply the two-part framework announced in *Strickland.    Ex parte Ellis*, 233 S.W.3d 324, 329–30 (Tex. Crim. App. 2007) (citing *Strickland*, 466 U.S. at 686–87).    An appellant must demonstrate that: (1) defense counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    *Strickland*, 466 U.S. at 689.

Regarding the first prong, which is the focus of Leita's challenge, evidence of ineffectiveness must be "firmly founded in the record," so the record "affirmatively demonstrates the alleged ineffectiveness."    *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.

---

[8] Leita challenges the effectiveness of his trial counsel's assistance only as to the charge of promotion of child pornography.    *See* TEX. PENAL CODE ANN. § 43.26(e) (West, Westlaw through 2015 R.S.).

Crim. App. 1999).   There is a strong presumption that a defense counsel's conduct "falls within the wide range of reasonable professional assistance."   *Strickland,* 466 U.S. at 689; *Stafford v. State,* 813 S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc).   So an appellant must first prove that his counsel acted unreasonably under prevailing professional norms and that the challenged actions could not be considered sound trial strategy.   *Strickland,* 466 U.S. at 689; *Stafford,* 813 S.W.2d at 506.

We only review trial strategy and tactics if the record proves that the attorney's actions are without any plausible basis.   *Ex parte Ewing,* 570 S.W.2d 941, 945 (Tex. Crim. App. 1978) (emphasis added).   If trial counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, appellate courts must defer to the trial counsel's decision.   *Ortiz v. State,* 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) (en banc); *see Lopez v. State,* 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).   In other words, we do not second-guess trial counsel's tactical decisions which do not fall below the objective standard of reasonableness.   *Young v. State,* 991 S.W.2d 835, 837–38 (Tex. Crim. App. 1999) (en banc).

"[T]he record on direct appeal will not [usually] be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision[-]making as to overcome the presumption that counsel's conduct was reasonable and professional."   *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).   However, there are rare ineffective-assistance cases in which the record is sufficient for an appellate

22

court to make a decision on the merits. *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). Leita argues that his is one of those cases.

If an appellant can demonstrate that defense counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable" and then prejudice will be legally presumed because it is "so likely." *Cronic*, 466 U.S. at 658–59; *see Bell v. Cone*, 535 U.S. 685, 696–97 (2002) (noting that, under *Cronic*, defense counsel's failure to test the prosecution's case must be "complete" before prejudice is presumed); *Strickland*, 466 U.S. at 692 (noting that "constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice"); *Ex parte McFarland*, 163 S.W.3d 743, 752–53 (Tex. Crim. App. 2005) (en banc) (discussing constructive denial of counsel and presumed prejudice). In determining whether defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, the court of criminal appeals has been guided by the following passage in *Cronic*:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of advocate. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cannon*, 252 S.W.3d at 348–50 (quoting *Cronic*, 466 U.S. at 656–57 (citations, footnotes, and internal quotations omitted)).

Nonetheless, it must also be remembered that the right to counsel does not mean a right to "errorless counsel" or counsel whose competency is judged from the advantage of hindsight. *Stafford,* 813 S.W.2d at 506. Indeed, appellate courts are required to make every effort to "eliminate the distorting effects of hindsight" and to "evaluate the conduct from counsel's perspective at the time." *Id.*

## B. Discussion

Leita asserts that the following acts or omissions constituted ineffective assistance of counsel: (1) failing to file a 404(b) request asking whether the State intended to use extraneous-offense evidence at trial or a motion in limine on prejudicial evidence found on the PlayStation and the computer's hard drive[9]; (2) utilizing a "Child Pornography Burglar" defense (the burglar defense) that opened the door for the State to enter evidence of multiple, damaging, and cumulative extraneous offenses not charged and unreasonably prejudicial; (3) failing to object when damaging, inadmissible, prejudicial, extraneous, cumulative information and testimony was offered against Leita; (4) failing to ask for limiting instructions for the extraneous-conduct evidence; (5) failing to object to an argument made by the State in closing; and (6) failing to present viable, obvious defenses by not presenting an expert witness and by not meaningfully cross-examining the State's witnesses on peer-to-peer file sharing.[10] We address each assertion in turn.

---

[9] Leita also claimed that counsel was ineffective because he failed to request a *Francis* election. *See Francis v. State,* 36 S.W.3d 121, 122 (Tex. Crim. App. 2000) (op. on reh'g) (en banc) (involving a defendant's request that the State be required to elect between the two acts of indecency). He does not develop his argument further; therefore, we do not address this contention. *See* TEX. R. APP. P. 38.1(i), 47.1.

[10] In addition, Leita contended that counsel failed: (1) to participate in the jury charge conference; (2) to seek a directed verdict on the promotion of child-pornography counts; (3) to request jury instructions; (4) to offer evidence of Leita's intellectual functioning during the guilt-innocence phase; and (5) to request

24

### 1. Failing to Object to Extraneous-Acts Evidence

To the extent Leita's first four contentions address the admission of State's Exhibit 66, we have already concluded that the images in that exhibit were more probative than prejudicial. Because of that determination, we cannot now conclude counsel's performance was ineffective for failing to file a 404(b) request or a motion in limine regarding those images, for failing to object or ask for limiting instructions when the images were offered and admitted into evidence, or for opening the door—if he did—for their admission with his burglar defense. We also note that Leita's trial counsel did object to the admission of this evidence. And, because of that objection, the number of uncharged child-pornography images and video summaries included in the offer was reduced.

As to Leita's complaints that his counsel failed to object to other extraneous-acts evidence, Leita's counsel established that the bag of panties found on the floor at Leita's residence contained adult panties. This provided some evidence that Leita was interested in adult women rather than children, arguably supporting Leita's defense strategy that he was not the one who downloaded the child pornography.[11] Likewise, the admission of the towel found near Leita's computer table would have enabled Leita

---

a jury instruction under Texas Penal Code section 6.01(a) that Leita did not voluntarily act to promote child pornography. But Leita's brief makes conclusory statements containing no argument, no citation to authorities, and no analysis pertaining to the complained-of ineffective assistance. Rule 38.1(i) of the Texas Rules of Appellate Procedure provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Because these remaining contentions do not satisfy the briefing requirements of Rule 38.1, they have been inadequately briefed, and nothing is presented for our review. *See id.*

[11] This reasoning would also apply to any other exhibits that might include images of adult women.

to attack the thoroughness and fairness of the State's investigation in his closing argument by pointing out that the State did not perform any sort of forensic analysis on the towel. Finally, Leita references evidence or summaries of evidence found on the PlayStation game console. But trial counsel may have chosen not to object to this evidence because it was arguably more probative than prejudicial to establish Leita's familiarity with technology, his plan, or the absence of mistake in establishing the possession element, and he chose not to draw attention to it. *See* TEX. R. EVID. 403, 404(b). Because trial counsel's reasons for his conduct and tactical decisions regarding this evidence do not appear in the record, there is at least the possibility that counsel's conduct could have been legitimate trial strategy. Without more, we decline to second-guess trial counsel's trial strategy here, and we defer to his decisions. *See Ortiz,* 93 S.W.3d at 88–89; *see also Lopez,* 343 S.W.3d at 143. Leita has not met his burden of establishing deficient performance in this regard. *See Jackson,* 877 S.W.2d at 771.

### 2. Failing to Request Limiting Instructions

Leita also complains that his trial counsel was ineffective because he did not ask for any limiting instructions regarding the admissibility of extraneous-conduct evidence. But there can be valid strategic reasons for not seeking a limiting instruction, and as such, failure to seek such an instruction is not intrinsically ineffective assistance of counsel. *See Abbott v. State*, 726 S.W.2d 644, 649 (Tex. App.—Amarillo 1987, pet. ref'd); *Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet); *Greene v. State*, 928 S.W.2d 119, 124 (Tex. App.—San Antonio 1996, no pet). In this case, any bad act evidence would arguably have had relevance apart from evidence of character conformity—for the

purposes of proving intent, plan, knowledge, and lack of mistake or accident.   *See* TEX. R. EVID. 404(b); *Wenger*, 292 S.W.3d at 203.   Those were the very issues this case turned on:   did Leita intentionally or knowingly possess child pornography and did he intentionally or knowingly possess this child pornography with the intent to promote it. Limiting instructions on that evidence would have added nothing to Leita's case because they would have limited the reach of the bad act evidence to the very issues that were to be decided.   It was not unreasonable for Leita's trial counsel not to seek any such instruction.   Leita has not met his burden of establishing deficient performance in this regard.   *See Jackson,* 877 S.W.2d at 771.

### 3.    Failing to Object to State's Closing Argument

Leita also complains that counsel was ineffective for failing to object to the State's closing argument.   Leita takes issue with the following statement made by the State in closing:

> Now, we, also, know that the officers testified that the examples of deviant behavior found inside the defendant's home—the photos of the children and the women, the videotaping next door, the bag of panties under the bed, the report to the police that the defendant was seen at the Riverside Park watching young children.

Proper prosecutorial argument should generally fall within one of the following categories:   (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 571 (Tex. Crim. App. 2006); *Cantu v. State*, 944 S.W.2d 669, 671 (Tex. App.—Corpus Christi 1997, pet. ref'd).   This statement, summarizing the evidence found at Leita's residence, fell within a proper category for

27

prosecutorial argument, and counsel had no basis for objection.  *See Brown*, 270 S.W.3d at 571.  In addition, considering the context in which the State made the statement, the summary of the evidence could arguably have been set out to rebut counsel's defensive theory that someone other than Leita was responsible for the pornography on Leita's computer.[12]  Furthermore, counsel may have strategically chosen not to object to this portion of the State's closing argument because he did not want to draw attention to it.  And finally, even if error, we cannot conclude that it is a single egregious error of omission by counsel that can constitute ineffective assistance.  *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013); *Thompson*, 9 S.W.3d at 813.  We conclude that counsel did not render ineffective assistance on this basis.

### 4.    Failing to Present Viable Defenses[13]

---

[12] The context of the complained-of statement follows:

We know no one was ever in the home, except for some loose mention by the defendant's mother of the back door being loose.  There is no evidence of any way of accessing the defendant's home, other than the defendant with his key, when he pulled into the driveway on August 1, 2012.

Now, we, also, know that the officers testified that the examples of deviant behavior found inside the defendant's home—the photos of the children and the women, the videotaping next door, the bag of panties under the bed, the report to the police that the defendant was seen at the Riverside Park watching young children.

We know he has an adult son.  He's 18.  He has no reason for being at the park, except for his desire and interest in children.

[13] Leita begins this argument by stating that because "[n]ot a single sentence of the State's opening statement mentions promotion of child pornography," "[a] responsive trial attorney would have pounced on this glaring omission and fortified the previously developed defense on this critical issue."  We agree with the State that Leita's argument is not clear, and without more, we are unable to address the specific argument.  Nonetheless, we have read the State's opening argument in its entirety and while we agree that the State did not mention the words "promotion of child pornography," its opening argument discussed all the anticipated testimony that supported a conviction for that offense.  We cannot conclude that the State's omission of the words "promotion of child pornography" is an omission upon which to "pounce."

28

Leita argues that trial counsel was ineffective because he failed to present viable defenses by not offering "easily-obtainable evidence of Shareaza's set-up and operations procedure, which necessarily would have refuted the State's evidence that Mr. Leita *knew* his child-pornography files were capable of being shared." He claims that the State's "wholly inaccurate description of how Shareaza's set-up procedure operates" could have been shown through evidence obtained through a "rudimentary internet search or a minimally competent computer expert." Leita asserts that "[p]lainly, trial counsel did not investigate one shred of technical or technology-based testimony the State offered" and, instead, "accepted all of the testimony by State computer forensic witnesses as irrefutable facts—highlighting the apparent fact that trial counsel was ill-prepared to develop technology-focused issues, which were the entire focus of the charges against Mr. Leita. This complete lack of attention and preparation constitute ineffective assistance of counsel." (Footnotes omitted.) Leita also argues that his trial counsel was ineffective because he did not cross-examine the State's witnesses on the veracity of their Shareaza testimony. And he complains that counsel did not cross-examine the witnesses to "expose the State's utterly inadequate proof of . . . the 'knowledge' element," specifically the testimony related to Shareaza's default sharing setting or its set-up procedure.

Though Leita's contentions raise questions as to the wisdom of and rationale for certain trial preparation and trial strategy decisions, Leita directs this Court to no portion of the record where there is evidence that his trial counsel failed to investigate the technology at issue, failed to investigate the technology-based evidence upon which the State's witnesses based their testimony, or failed to seek a defense expert in this area.

29

He directs us to nothing in the record where there is evidence of trial counsel's strategic bases for his decisions.[14]  Leita has not met his burden to establish ineffective assistance in this regard.  *See Andrew*, 159 S.W.3d 98, 101–02.

### 5.  Summary

Leita raises his claim of ineffective assistance claim on direct appeal.  Trial counsel has not had an opportunity to respond to these areas of concern.  This direct-appeal record is simply insufficient to show that counsel's representation was so deficient and so lacking in strategic decision-making as to overcome the presumption that his conduct was reasonable and professional.  *See Bone*, 77 S.W.3d at 833.  We cannot conclude that trial counsel's performance was so unreasonably unstrategic that the jury had no choice but to convict Leita for promotion of child pornography, as he urges.  And we will not use the "distorting effects of hindsight" to evaluate conduct from counsel's perspective at that time.  *See Stafford*, 813 S.W.2d at 506.  We cannot conclude that the conduct of Leita's trial counsel undermined the proper functioning of the adversarial process such that Leita's Sixth Amendment rights were denied.  *See Cronic*, 466 U.S. at 658–59; *Strickland*, 466 U.S. at 692; *Cannon*, 252 S.W.3d at 349.  We overrule Leita's fifth issue.[15]

---

[14] Leita directs us to the following statement made by trial counsel in closing:  "I'm kind of on the outskirts.  I haven't quite caught up with my kids or others on all the things about computers."  Leita suggests this statement reveals counsel's lack of expertise with technology issues.  But, counsel continued:  "And I think what happens sometimes is that we begin to rely so much on our computers and programs and all of those things—and I know that happens in law enforcement—that I submit we forget the basics."  Reviewing the context in which the challenged statement was made, counsel talked about the bigger picture—the possibility that there may have been someone else who accessed Leita's computer despite what the studies of the computer and other technology revealed.  We are not persuaded that counsel's statement provides support for this ineffective-assistance-of-counsel argument.

[15] Although Leita's attempt at a direct appeal has been unsuccessful, he is not without a potential remedy.  Challenges requiring development of a record to substantiate a claim, such as ineffective

## VI.    CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of August, 2016.

---

assistance of counsel, may be raised in an application for writ of habeas corpus.   *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2015 R.S.); *Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001); *Ex parte Torres*, 943 S.W.2d 469, 476 (Tex. Crim. App. 1997).   An application for writ of habeas corpus relief would "provide an opportunity to conduct a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at . . . trial."   *Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999); *see Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("This Court has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."); *see also Ex parte Miller*, 330 S.W.3d 610, 623 (Tex. Crim. App. 2009) ("To obtain relief in the form of a new direct appeal on a claim of ineffective assistance of appellate counsel, applicant must show that '(1) counsel's decision not to raise a particular point of error was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal.'") (internal citations omitted); *Ex parte Santana*, 227 S.W.3d 700, 704–05 (Tex. Crim. App. 2007).